EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Blas D. Díaz Rivera<br><br>Peticionario<br><br>vs.<br><br>Secretario de Hacienda<br><br>Recurrido | Apelación<br><br>2006 TSPR 85<br><br>168 DPR _____ |

Número del Caso: CC-2004-435

Fecha: 18 de mayo de 2006

Tribunal de Apelaciones:

        Región Judicial de San Juan-Panel I

Juez Ponente:

        Hon. Carlos Rivera Martínez

Oficina del Procurador General:

        Lcda. Wanda I. Simons García
        Procuradora General Auxiliar

        Lcda. Doraliz E. Ortiz De León
        Procuradora General Auxiliar

Abogado de la Parte Peticionaria:

        Lcdo. Carlos E. Díaz Olivo

Materia: Reintegro

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Blas D. Díaz Rivera

    Peticionario

       vs.                       CC-2004-435       CERTIORARI

Secretario de Hacienda

    Recurrido

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 18 de mayo de 2006

A finales del mes de junio de 1998, Blas D. Díaz Rivera decidió retirarse del servicio público activo, por lo cual solicitó la liquidación de sus haberes y de los beneficios correspondientes por los servicios prestados. En virtud de lo anterior, el Senado del Estado Libre Asociado de Puerto Rico le envió al Departamento de Hacienda, en adelante Hacienda, una nómina especial para el pago de $2,400 por concepto de la liquidación de las vacaciones de Díaz Rivera. El 30 de junio de 1998, Hacienda recibió la referida nómina especial. Así las cosas ——y amparándose en lo dispuesto en el Artículo 9(j) de la Ley Núm. 230 del 23 de julio de 1974, conocida como la Ley de Contabilidad del Gobierno

de Puerto Rico, 3 L.P.R.A. § 283h(j), la cual impide desembolsar fondos públicos a quien tenga deudas con el erario-- Hacienda retuvo la aludida suma para el pago de unas contribuciones adeudadas por Díaz Rivera pertenecientes al año 1982.

Inconforme con tal retención, el 14 de octubre de 1998 Díaz Rivera le envió una carta a la entonces Secretaria de Hacienda, Xenia Vélez Silva impugnando el aludido crédito. Indicó que se había aplicado indebidamente el balance de la liquidación de sus vacaciones a una deuda prescrita de contribuciones sobre ingreso de 1982. Posteriormente, el 26 de octubre de 1998, la entonces Subdirectora del Negociado de Recaudaciones, Sra. Ivette Lebrón Agostini, mediante comunicación escrita, formalmente le notificó a Díaz Rivera que había acreditado la suma retenida a una deuda de $8,309.15 por concepto de contribuciones sobre ingresos y, a su vez, le indicó la razón por la cual procedía el crédito a favor de la Secretaria de Hacienda; le explicó que aun cuando en efecto no podía cobrarse la deuda por métodos ordinarios de cobro debido a que estaba prescrita, ello no le impedía a la Secretaria de Hacienda acreditar a la deuda la liquidación de sus vacaciones debido a que el Artículo 9(j) de la Ley de Contabilidad de Puerto Rico, ante, le impedía desembolsar fondos del Estado a quien tuviera deudas con el erario. Asimismo, le apercibió que, de no estar de acuerdo con la decisión, tenía derecho a

solicitar revisión, presentando una querella ante la Secretaría de Procedimiento Adjudicativo de dicha agencia.[1]

El 2 de noviembre de 1998 Díaz Rivera le envió una segunda misiva a Vélez Silva, esta vez solicitando la celebración de una vista administrativa para la revisión de la aludida determinación; argumentó que el descuento realizado respondía a una deuda contributiva de más de quince años sobre la cual nunca se había recibido notificación o gestión de cobro alguna. En vista de ello, indicó que, conforme la Sección 6006 del Código de Rentas Internas de 1994, 13 L.P.R.A. § 8026, la referida deuda estaba prescrita. A su vez, señaló que--según los principios y normas sobre prescripción dispuestas en el Código Civil de Puerto Rico, así como lo resuelto en Carazo v. Secretario de Hacienda, 118 D.P.R. 306 (1987)-- el descuento efectuado era improcedente.

La aludida solicitud fue acogida como una querella y referida a la Secretaría de Procedimiento Adjudicativo, quien ordenó al Negociado de Recaudaciones que contestara la misma. En cumplimiento con lo ordenado, el 25 de febrero de 1999 el Negociado de Recaudaciones contestó la querella reafirmándose en lo expresado en la misiva del 26 de octubre de 1998. Así las cosas, la Secretaría de

---

[1] Específicamente, en la referida misiva se hizo constar que al 30 de junio de 1998 surgía de los récords que Díaz Rivera adeudaba la antes mencionada cantidad de $8,309.15 por concepto de contribuciones sobre ingresos. De este modo, se indicó que se había acompañado con la misiva una certificación de deuda.

Procedimiento Adjudicativo notificó a Díaz Rivera la celebración de una vista administrativa a ser celebrada el 5 de mayo de 1999.

Mientras transcurría el antes mencionado procedimiento, el 8 de febrero de 1999 entró en vigor la Ley Núm. 209 de 9 de agosto de 1998, 3 L.P.R.A. § 283(a), en adelante Ley Núm. 209, la cual enmendó el Código de Rentas Internas de 1994, a los fines de proveer que no empece lo establecido en la Ley de Contabilidad del Gobierno, el Estado estaba impedido de cobrar deudas contributivas luego de transcurridos diez (10) años desde su tasación. La referida pieza legislativa dispuso, además, que transcurrido este término Hacienda tenía que eliminar las aludidas deudas de sus récords.

En virtud de lo anterior, durante la vista administrativa, Díaz Rivera argumentó no sólo que su alegada deuda contributiva estaba prescrita, sino, además, que tenía derecho al beneficio provisto por la Ley Núm. 209.[2] En virtud de lo anterior, el 9 de junio de 1999 el

---

[2] Durante la referida vista Díaz Rivera alegó, además, que la retención o confiscación que Hacienda intentaba efectuar sobre su compensación equivalía a un embargo de salarios del contribuyente, acción que estaba sujeta a ciertas salvaguardas de naturaleza sustantiva y procesal que no habían sido observadas. Asimismo, señaló que los principios fundamentales de trato justo y razonabilidad esbozados en la protección constitucional del debido proceso de ley, imposibilitaban a Hacienda a cobrar una deuda en donde se pretendía que le aplicaran al contribuyente las normas de prescripción impidiéndole presentar prueba para derrotar la existencia de la deuda contributiva que se le imputaba y el monto de su importe, mientras sin embargo, Hacienda intentaba esquivar la
(Continúa . . .)

Oficial Examinador que presidía la vista ordenó a las partes a que se expresaran por escrito en cuanto a la aplicación de la Ley Núm. 209 a los hechos del presente caso.

Luego de que ambas partes expusieran sus respectivas posiciones al respecto, el 1 de diciembre de 2000, mediante resolución a esos efectos, la Secretaría de Procedimiento Adjudicativo denegó la solicitud de reintegro presentada por Díaz Rivera. Específicamente, resolvió que el Artículo 9(j) de la Ley de Contabilidad del Gobierno, impedía a Hacienda efectuar desembolso alguno a favor de un contribuyente que tuviese una deuda contributiva con el erario. Con respecto a la Ley Núm. 209 determinó que, aun cuando en efecto establecía que el Secretario de Hacienda tenía que eliminar toda deuda de los récords si tenía diez (10) años o más de tasadas, ésta no era aplicable a los hechos del presente caso debido a que no tenía efecto retroactivo. A esos efectos, señaló que conforme al Artículo 3 de la referida Ley, ésta entraría en vigor a los 180 días de su aprobación. En vista de ello, indicó que, habiéndose aprobado el 9 de agosto de 1998, la Ley Núm. 209 entró en vigor el 8 de febrero de 1999.

---

aplicación y limitaciones que los principios de prescripción le imponen, invocando, en abierta violación de ley, mecanismos alternos cuyo efecto final era crear un procedimiento administrativo desigual e injusto.

Conforme a lo anterior, se indicó que la retención del salario de Díaz Rivera ocurrió el 26 de octubre de 1998 cuando todavía no había entrado en vigor la aludida pieza legislativa, por lo cual al momento de efectuarse el descuento se había actuado conforme al derecho vigente. En vista de ello --y apoyándose en lo resuelto en Pagán v. Tribunal de Contribuciones, 73 D.P.R. 654 (1952) y confirmado en Carazo v. Secretario de Hacienda, ante-- concluyó que al momento de la retención el Secretario de Hacienda estaba facultado para cobrar mediante métodos alternos toda deuda vencida aunque estuviera prescrita para el cobro por la vía de apremio.

Cónsono con lo anterior, se determinó que el Artículo 2 de la Ley Núm. 209 establecía que los descuentos de sueldo y los planes de pago vigentes mantendrían todo su vigor aún después de la aprobación de la Ley. A su entender el propósito de esta disposición era evitar reclamos de casos ya adjudicados en descuentos de sueldos o en planes de pagos para que éstos no fueran reabiertos sobre la base del nuevo estado de derecho.

Insatisfecho con tal determinación, y luego de presentar una moción de reconsideración ante Hacienda, el 28 de diciembre de 2000 Díaz Rivera presentó ante el Tribunal de Primera Instancia, Sala Superior de San Juan, una demanda contra Hacienda. En la misma solicitó --por los fundamentos esbozados ante Hacienda-- que se declarara que la retención y embargo efectuado por dicha Agencia

había sido contrario a derecho y que, por tanto, se le ordenara a Hacienda realizar el reintegro de la suma retenida, más los intereses correspondientes y costas. Asimismo, argumentó que en el procedimiento administrativo llevado a cabo por Hacienda, se le había violentado el debido proceso de ley toda vez que para emitir su determinación había tomado en consideración documentos externos al expediente del caso; alegó, además, que se le había privado su oportunidad de ser oído debido a que Hacienda únicamente había resuelto el planteamiento de la aplicación de la Ley Núm. 209 al caso obviando sus otros argumentos jurídicos.[3] Finalmente, señaló que la resolución había menoscabado su derecho a revisión judicial debido a que se le había notificado incorrectamente que podía solicitar la revisión de la determinación ante el Tribunal de Apelaciones. El 3 de septiembre de 2002, Díaz Rivera enmendó su demanda a los fines de incluir una acción de daños y perjuicios por las alegadas violaciones al debido proceso de ley incurridas por Hacienda en la tramitación del caso.

---

[3] Específicamente, argumentó que en la resolución se indicó que "[p]ara efectos de clarificar los hechos de este caso, el Negociado de Recaudaciones reforzó su posición como Negociado a base de un Memorando Legal Número N-4 de 29 de septiembre de 1999; aclaró la cantidad de la liquidación de vacaciones por "Moción Informativa" de 14 de octubre de 1999; se agotaron mecanismos informales de adjudicación y la parte demandante reaccionó con una solicitud de adjudicación el 20 de septiembre de 2000." Díaz Rivera alegó que nunca recibió las aludidas mociones y que su solicitud de adjudicación no fue en reacción a las mismas sino para solicitar la disposición final del caso ante la inacción de Hacienda.

El 24 de enero de 2003, sin haber contestado la demanda enmendada[4], Hacienda presentó ante el foro primario una moción solicitando se dictara sentencia sumaria a su favor. En la misma alegó, en síntesis, que la controversia planteada en el caso consistía en determinar si debía aplicar la Ley Núm. 209 o el estatuto vigente a la fecha en que se efectuó la retención del pago por deudas contributivas vencidas. Específicamente, argumentó que como la Ley Núm. 209 entró en vigor el 8 de febrero de 1999 y las retenciones efectuadas en junio y octubre de 1998, el Negociado de Recaudaciones venía obligado al cobro de la deuda conforme a los descuentos de sueldos y planes de pago efectuados antes de esa fecha, siendo el cobro hecho conforme a derecho y de carácter definitivo. Cónsono con ello adujo que no procedía el reintegro debido que la alegada deuda de Díaz Rivera ya había sido borrada de los libros de Hacienda antes de la fecha en que la Ley Núm. 209 entró en vigor.

Indicó, además, que el Secretario de Hacienda tenía facultad en ley para propulsar y aprobar, mediante reglamentación correspondiente, el modo y la manera en que se realizarían los cobros de las deudas prescritas que eran objeto de descuentos de sueldos y planes de pago ante la vigencia de la Ley Núm. 209, una ley de carácter prospectivo. Asimismo, señaló que aplicar la nueva norma

---

[4] Aun cuando Hacienda no contestó la demanda enmendada sí había contestado la demanda original.

del Código de Rentas Internas retroactivamente, conllevaría una proliferación de casos y reclamaciones contra el Estado y tendría un efecto perjudicial sustancial sobre las Rentas Netas del Fondo General.

Finalmente, arguyó que procedía la desestimación de la reclamación de daños y perjuicios presentada por Díaz Rivera toda vez que el estado no había renunciado a su inmunidad del soberano a esos efectos. Argumentó que la Ley de Pleitos contra el Estado, Ley Núm. 104 de 29 de junio de 1955, 32 L.P.R.A. § 3077, expresamente prohibía la radicación de una de acción de daños por razón de la imposición y cobro de contribuciones sobre ingresos. A su vez, indicó que aun si existiera una causa de acción bajo la Ley de Pleitos contra del Estado, no procedía la reclamación toda vez Díaz Rivera había incumplido con el requisito de notificación al Estado dentro del término de 90 días establecido en la Ley de Pleitos contra el Estado. Finalmente alegó que las alegaciones de violación de los derechos civiles al contribuyente estaban prescritas.

Llamado el caso para la conferencia sobre el estado de los procedimientos el 19 de febrero de 2003, ninguna de las partes compareció a sala. El foro primario, en corte abierta --y haciendo constar que había examinado detenidamente los planteamientos de Hacienda-- declaró con lugar la moción de sentencia sumaria presentada por Hacienda y adelantó que habría de emitir sentencia a través de su despacho declarando que, como cuestión de

derecho, no podía aplicarse retroactivamente la Ley Núm. 209, ante, y que tampoco procedía la acción en daños y perjuicios presentada por Díaz Rivera toda vez que no se reconocía una causa de acción por razón de cobro o imposición de contribuciones. Manifestó, además, que "al día de hoy la parte demandante promovida no ha presentado oposición a la moción presentada de sentencia sumaria". Todo lo anterior se hizo constar en la minuta de este día, la cual fue enviada a ambas partes el 17 de marzo de 2003.

En el entretanto, y antes de que se notificara la referida minuta, el 14 de marzo de 2003 Díaz Rivera presentó su oposición a la moción de sentencia sumaria presentada por Hacienda, solicitando, asimismo, que se dictara sentencia a su favor. En la misma nuevamente alegó que la deuda que intentaba cobrar Hacienda estaba prescrita y que no existían métodos alternos, jurídicamente viables, para cobrar la aludida deuda. A esos efectos, argumentó que en Pagán v. Tribunal de Contribuciones, ante, se resolvió que el Artículo 124 del Código Político establecía un mecanismo alterno que permitía al gobierno cobrar deudas contributivas prescritas mediante el embargo o retención de salarios y otras compensaciones a los empleados de gobierno. Alegó que al derogarse el Artículo 124 del Código Político se aprobó una nueva disposición, el Artículo 9 (j) de la Ley de Contabilidad el cual, a su entender, era parecido pero no igual a la derogada disposición. Conforme a lo

anterior, señaló que no existía en nuestro ordenamiento jurídico una disposición que estableciera un mecanismo alterno que le permitiera al gobierno cobrar deudas contributivas prescritas, mediante la confiscación de créditos a sus empleados por razón de servicios prestados al Estado. Siendo esto así, adujo que la retención efectuada por Hacienda fue un acto ilegal y por ello procedía el reintegro solicitado.

Con respecto a la aplicación de Ley Núm. 209 argumentó que cuando Hacienda actúa contra un contribuyente, la retención y embargo que efectúa no puede ser un acto final de cobro de la supuesta deuda debido a que, precisamente, la legalidad de tal acción es lo que está bajo impugnación en el proceso administrativo. Así pues, indicó que era equivocada la alegación de Hacienda de que no le aplicaba el beneficio de la Ley Núm. 209 porque su deuda, en virtud de la retención, ya había sido eliminada de los récords de Hacienda por lo cual no existía al momento de entrar en vigor la ley.

De otra parte, indicó que no procedía que se dictara sentencia sumaria a favor de Hacienda toda vez que la moción que dicha Agencia radicara se circunscribió al argumento relativo a la Ley Núm. 209. Aun cuando fuera correcto lo alegado con respecto a ese punto por Hacienda al no haber considerado los restantes argumentos jurídicos del demandante, el demandado como promovente de la moción de sentencia sumaria no había establecido, tal y como

requiere nuestro ordenamiento, que "la otra parte no tiene derecho a recobrar bajo cualquier circunstancia que resulte discernible de las alegaciones".

Luego de varios trámites e incidentes procesales, el 7 de abril de 2003 el foro primario finalmente emitió sentencia sumaria acogiendo todos los argumentos esgrimidos por Hacienda. De este modo, desestimó la demanda y todas las causas de acción de Díaz Rivera. Es preciso destacar que aun cuando durante la conferencia sobre el estado del caso no se había considerado la oposición a la sentencia sumaria presentada por Díaz Rivera al emitir la sentencia, el foro primario hizo constar que se había presentado la aludida oposición, y que la había examinado al tomar su decisión.

Insatisfecho con tal determinación, Díaz Rivera acudió, vía recurso de apelación, ante el Tribunal de Apelaciones, alegando en síntesis, los argumentos que anteriormente había planteado ante Hacienda.

Posteriormente, el 12 de abril de 2004, el Tribunal de Apelaciones emitió sentencia confirmatoria de la emitida por el foro primario. Aún insatisfecho, Díaz Rivera recurrió --vía *certiorari*-- ante este Tribunal, señalando que incidió el foro apelativo intermedio al:

> …resolver que la alegada deuda contributiva no estaba prescrita, sin haber examinado los términos prescriptivos aplicables y la naturaleza y consecuencia que en nuestro sistema jurídico tiene la figura de la prescripción.
>
> …resolver que la Ley de Contabilidad de Gobierno le permite al estado cobrar deudas de los

ciudadanos sin importar el número de años que hubiere transcurrido desde su prescripción y al ignorar lo resuelto en las decisiones de Carazo v. Secretario de Hacienda[, ante] y de Rivera v. Secretario de Hacienda[, 119 D.P.R. 265 (1987)].

…ignorar que la retención de salarios ya devengados para el cobro de contribuciones prescritas constituye un "taking" o confiscación en violación a la cláusula del debido proceso de ley.

…ignorar que la causa de acción por violaciones al debido proceso durante el desarrollo del procedimiento administrativo es una causa de acción distinta e independiente de cualquiera otra de acción con respecto al cobro ilegal de una contribución.

Expedimos el recurso. Contando con la comparecencia de ambas partes, y estando en condición de resolver el mismo, procedemos a así hacerlo.

I

Por estar íntimamente relacionados entre sí, analizamos y discutimos en conjunto los primeros tres señalamientos de error.

Respecto a la facultad de tributación del Estado, este Tribunal ha señalado que "es el más fundamental de sus poderes públicos y gubernamentales". Burlington Air Exp. Inc. v. Mun. De Carolina, 154 D.P.R. 588, 597 (2001); R.C.A. v. Gobierno de la Capital, 91 D.P.R. 416, 428 (1964). Ello en virtud de que, se trata de un poder que es "esencial a su subsistencia y para su supervivencia como un Estado político". Ibid.

Conforme a lo anterior, hemos expresado que toda vez que esa autoridad contributiva es fundamental a la vida del Estado, "el poder fiscal gubernamental es constitucionalmente de naturaleza amplia y abarcadora". F.D.I.C. v. Mun. de San Juan, 134 D.P.R. 385, 390-391 (1993); véase, además, Continental Insurance Company v. Secretario de Hacienda, ante.

Ahora bien, no obstante lo anterior, este Tribunal ha advertido que "[e]l cobro de contribuciones por el Estado no es irrestricto". Rivera Santiago v. Secretario de Hacienda, ante, a la pág. 268; Carazo v. Secretario de Hacienda, ante, a la pág. 310. De este modo, todo procedimiento de cobro de contribuciones está sujeto a (1) trámites mínimos de debido proceso de ley; (2) a la exigibilidad y validez de la deuda; y (3) a los términos prescriptivos dispuestos en los diversos estatutos. *Ibid.*

En virtud de la antes mencionada facultad constitucional, el Estado puede cobrar --en lo aquí pertinente-- contribuciones sobre ingresos. Particularmente, la contribución sobre ingresos es un tributo sumamente importante, toda vez que es "el que más rentas contributivas produce al erario puertorriqueño". G. Meléndez Carrucini, Ingreso Tributable, San Juan, Inst. Contribuciones P.R., 1991, pág. 12; Meléndez Carrucini, Procedimiento Contributivo de Puerto Rico, San Juan, Inst. Contribuciones P.R., 1981, a la pág. 17. Por su importancia, a través de los años la

Asamblea Legislativa mediante diferentes estatutos fiscales ha facultado al Secretario de Hacienda a tasar y cobrar este tipo de contribuciones.

En el año 1982, fecha por la cual se le está cobrando una deficiencia a Díaz Rivera, las contribuciones sobre ingresos se cobraban de acuerdo con la Ley de Contribuciones sobre Ingresos de 1954, Ley Núm. 91 del 29 de junio de 1954, según enmendada. Mediante la aludida pieza legislativa la Legislatura estableció que Hacienda debía tasar toda deficiencia contributiva dentro del término de cuatro años luego de haberse radicado la planilla. Sección 275(a), 13 L.P.R.A. § 3275. A su vez, dispuso un término prescriptivo de siete (7) años, a contarse desde que la contribución fue tasada, para que dicha contribución fuera cobrada mediante el procedimiento de apremio o mediante procedimiento en corte. Sección 276 (c), 13 L.P.R.A. 3276 (c).

De particular relevancia al análisis de la antes mencionada disposición estatutaria es lo resuelto por este Tribunal en Pagán v. Tribunal de Contribuciones, ante. En el citado caso, un Senador impugnó el descuento que se hizo de su sueldo para satisfacer ciertas contribuciones ya prescritas. Al interpretar la Sección 61(c) de la entonces vigente Ley de Contribuciones sobre Ingresos —igual a la Sección 276(c)— establecimos que "el periodo prescriptivo para entablar un procedimiento judicial o trabar un embargo (apremio) para cobrar una contribución

tasada e impuesta, … solamente imp[edía] al Tesorero[5] ejercitar dichos remedios pero en forma alguna limita[ba] su derecho a cobrar la contribución por otros medios que pud[ieran] existir en ley". A la pág. 658. Específicamente, resolvimos que el Artículo 124 del Código Político --que prohibía el desembolso de fondos públicos a favor de persona que tuviera deudas atrasadas con el Pueblo de Puerto Rico  y permitía el descuento en los sueldos gubernamentales para satisfacerlas-- constituía un método alterno establecido en ley para cobrar contribuciones atrasadas, que no estaba sujeto al término prescriptivo establecido en la derogada sección 61(c)[6]. De

_____

[5] El Tesorero era quien cobraba las contribuciones sobre ingresos en ese momento. Posteriormente, se facultó al Secretario de Hacienda a llevar a cabo dicho cobro.

[6] Específicamente, el Artículo 124 del Código Político establecía:

> –*Pago de sueldo o reclamación*. –*Abonos de cantidades retenidas*. –No se pagará dinero a ninguna persona por concepto de salario, o reclamación entablada contra la Tesorería Insular, si el interesado se hallare en descubierto con El Pueblo de Puerto Rico, por deudas atrasadas, y así consta en los libros del Contador, mientras no hubiere aquél arreglado sus cuentas con el Tesorero de Puerto Rico y satisfecho a éste todas las cantidades de las cuales fuere responsable; Disponiéndose, que por razones suficientes y siempre que los intereses del Gobierno Insular resultaren con ello beneficiados, podrán hacerse los necesarios pagos de retribución o salario devengado por personas en descubierto con El Pueblo de Puerto Rico, que continúan en el servicio del Gobierno Insular, mediante la recomendación del Contador, aprobada por el Gobernador.

> En todos los casos en que la paga o salario de
(Continúa . . .)

este modo, determinamos que aunque hubiese transcurrido el término prescriptivo establecido para el cobro por apremio o por la vía judicial de una contribución luego de su imposición, lo anterior no impedía su cobro mediante un método alterno establecido en una ley de naturaleza distinta a una reclamación o a un procedimiento de apremio.

De las antes mencionadas disposiciones estatutarias surgía la duda de si el gobierno tenía la facultad de hacer retenciones para cobrar una contribución tasada cuyo término para cobrar después de la tasación había expirado. Meléndez Carrucini, Procedimiento Contributivo de Puerto Rico, op. cit., a la pág. 624. En Pagán v. Tribunal de Contribuciones, ante, contestamos al aludida interrogante en la afirmativa.

Así pues, al armonizar ambas disposiciones estatutarias señalamos que "la primera [--la Sección 61(c)--] se ref[ería] a procedimientos para el cobro de contribuciones sobre ingresos, estableciéndose un período precriptivo, la segunda [--el Artículo 124--] se ref[ería] a una prohibición absoluta de pagar dinero a ninguna persona salario o reclamación, si esa persona se hallara en descubierto con El Pueblo de Puerto Rico por deudas

---

alguna persona, o una cantidad por reclamación reconocida como buena contra El Pueblo de Puerto Rico, se retuviere en cumplimiento de este artículo, deberá el Contador abonar a cuenta de la deuda o persona alcanzada la cantidad así retenida o la parte de ella que fuere necesaria para satisfacer o extinguir dicha deuda.

atrasadas, cualquiera que sea la naturaleza de esas deudas. Entre ellas están incluidas las deudas contributivas". Pagán, ante, a la pág. 659. De este modo, en Pagán establecimos que aun cuando no podía cobrarse la deuda por la vía judicial o la de apremio, la ley sí autorizaba a no pagarle esos salarios y dedicarlos a solventar esa deuda, siendo el Artículo 124 del Código Político un mecanismo distinto al procedimiento administrativo de embargo o apremio provisto en la antes mencionada Sección 61(c).[7]

Posteriormente, el Artículo 124 del Código Político fue derogado mediante la aprobación de la Ley Núm. 230 del

---

[7] Lo anterior es cónsono con la norma de la prescripción extintiva la cual "es materia sustantiva y no procesal, regida por las disposiciones del Código Civil como una de las formas de extinción de las obligaciones". Martínez v. Sociedad de Gananciales, 145 D.P.R. 93, 101 (1998); García Aponte v. E.L.A., 135 D.P.R. 137, 142 (1994). La aludida norma tiene como propósito "el imperativo de castigar la inercia en el ejercicio de los derechos y asegurar el 'señorío de las cosas' al evitar litigios difíciles de adjudicar debido a la antigüedad de las reclamaciones." Martínez v. Sociedad de Gananciales, ante, a las págs. 101-102; véase, además, Muñoz Rodríguez v. Ten General Contractors, res. el 3 de marzo de 2006, 2006 TSPR 33; Cintrón v. E.L.A., 127 D.P.R. 582, 588 (1990); Colón Prieto v. Géigel, 115 D.P.R. 232, 243 (1984).

El efecto práctico de dicha norma es que "cumplida la prescripción que quita al derecho del acreedor su fuerza coactiva, por despojarlo de la acción, se ha satisfecho el interés público, y es al particular interesado a quien le corresponde su liberación para satisfacer sus conveniencias individuales". Ortega, et al. v. Pou, et al., 135 D.P.R 711, 713-714 (1994); Cintrón v. E.L.A., ante, a la pág. 589. Así pues, extinguida la acción destinada a hacer valer el derecho subsiste entre las partes una obligación natural o moral aun cuando es irreclamable por la vía judicial. Ibid.

23 de julio de 1974, conocida como la Ley de Contabilidad del Gobierno de Puerto Rico, 3 L.P.R.A. § 283h(j). No obstante lo anterior, el lenguaje del antes mencionado Artículo 124 fue incorporado en el Artículo 9(j) de la Ley de Contabilidad. Carazo v. Secretario de Hacienda, ante, esc. 4; véase, además, G. Meléndez Carrucini, Procedimiento Contributivo de Puerto Rico, *op. cit.*, a las págs. 631-632. A tales efectos, el aludido Artículo 9 en su inciso (j) dispuso, en lo aquí pertinente que:

> El Secretario, los pagadores nombrados por el Secretario, los municipios, las instrumentalidades, las entidades corporativas no efectuarán pagos a persona natural o jurídica alguna que por cualquier concepto tenga deudas vencidas con el Estado Libre Asociado de Puerto Rico o con algún municipio. Cuando hubiere razones justificadas, los intereses del Estado Libre Asociado de Puerto Rico o del municipio correspondiente resultaren beneficiados, y el Secretario lo aprobare, en los casos en que la deuda es con el Estado Libre Asociado o el alcalde del municipio que correspondiera si la deuda es con un municipio, podrán hacerse los pagos que sean necesarios a aquellas personas que estén en deuda con el Estado Libre Asociado o con algún municipio y que continúen prestando servicios o suministrando materiales o equipo al gobierno, a los municipios, a las instrumentalidades y a las entidades corporativas. Las cantidades retenidas en cumplimiento de este inciso serán aplicadas a la deuda de la persona natural o jurídica a la cual se le retuvieren. Disponiéndose, que si la persona natural o jurídica a quien se le fuera a hacer la retención estuviere en deuda con el Estado Libre Asociado y simultáneamente con uno o más municipios, la deuda del Estado Libre Asociado será cobrada en primer término, y las demás se cobrarán sucesiva y estrictamente a base de sus fechas de vencimiento, cobrándose siempre la más antigua primero.
>
> Se autoriza al Secretario en casos en que la deuda sea con el Estado Libre Asociado y al Alcalde en caso en que la deuda sea con algún

> municipio, a conceder un plan de pagos parciales que facilite el saldo de la deuda, si la situación económica del deudor así lo justificare.

Surge de lo anterior que en la referida disposición estatutaria se mantuvo la prohibición del Artículo 124 a los efectos de que el Secretario de Hacienda no podía efectuar pagos a persona alguna que tuviera deudas con el E.L.A.

Por su parte, en Carazo v. Secretario de Hacienda, ante, tuvimos ante nos la interrogante de si la Ley de Contribuciones sobre Caudales Relictos y Donaciones, Núm. 167 de 30 de junio de 1968, establecía un mecanismo alterno legalmente válido para que Hacienda pudiera cobrar contribuciones aun cuando estuvieran prescritas bajo la antes mencionada Sección 276(c) de la Ley de Contribuciones sobre Ingresos. Al contestar la anterior interrogante en la negativa, de entrada señalamos que co-existían diferentes métodos mediante los cuales el Estado podía cobrar contribuciones adeudadas, a saber: (1) el pago voluntario; (2) la retención; (3) el requerimiento del Secretario de Hacienda; (4) el procedimiento de apremio; y (5) otros procedimientos autorizados por ley. A su vez, reconocimos que "[c]omo norma general, expirado el término dispuesto por ley sin el Estado haber iniciado el procedimiento para cobrar contribuciones adeudadas y tasadas, está impedido de cobrarlas". Carazo v. Secretario de Hacienda, ante, a la pág. 312.

Reiterando lo establecido en Pagán a los efectos de que las contribuciones prescritas no eran exigibles a menos que expresamente existiera un mecanismo válido en ley para cobrarlas, en Carazo, ante, señalamos que la Ley de Caudales Relictos no disponía un mecanismo similar. Conforme a lo anterior, no hay duda que en el referido caso, aun cuando reiteramos lo resuelto en Pagán, ante, señalamos que no aplicaba a ese caso debido a que la Ley de Caudales Relictos allí en controversia no establecía un mecanismo alterno válido como el establecido en el Artículo 124 del Código Político.

La Sección 276(c) de Ley de Contribuciones sobre Ingresos fue derogada por la Ley Núm. 120 de 31 de octubre de 1994, mejor conocida como el Código de Rentas Internas de 1994, 13 L.P.R.A. § 8001 et seq. Particularmente, la Sección 6006(d)(1)(A) del Código de Rentas Internas de 1994, 13 L.P.R.A. § 8026 (d)(1)(A), estableció nuevamente que existía un período prescriptivo de siete (7) años para que Hacienda pudiera cobrar una deuda por el procedimiento de apremio o demanda judicial. A su vez dispone que "el monto de contribuciones o impuestos establecidos por cualquier [disposición del referido Código] será tasado dentro de cuatro (4) años después de haberse rendido la planilla o declaración, y ningún procedimiento en corte sin tasación para el cobro de dichas contribuciones será comenzado después de la expiración de dicho período". 13 L.P.R.A. § 8025.

En el presente caso, en el momento en que Hacienda intentó cobrar la alegada deuda contributiva de Díaz Rivera ya había transcurrido el término de siete (7) años establecido para cobrar la misma mediante el procedimiento de apremio o de cobro judicial. En virtud de lo anterior, no hay duda que la misma estaba prescrita, por lo cual el Secretario de Hacienda estaba impedido de cobrarla <u>a través del procedimiento de apremio o por la vía judicial</u>.

No obstante lo anterior, según indicamos anteriormente, esto no significa el Secretario de Hacienda estaba totalmente imposibilitado de cobrar la deuda. Ciertamente, el Secretario podía cobrar la deuda después del transcurso del antes mencionado término prescriptivo <u>a través de un mecanismo alterno válido existente en ley</u>.

En el presente caso, el Secretario estaba <u>facultado</u> a realizar la retención de la liquidación de vacaciones de Díaz Rivera a través del Art. 9(j) de la Ley de Contabilidad del Gobierno, ante, el cual, según indicamos en <u>Carazo</u> incorporó el lenguaje del Artículo 124 del Código Político, el cual validamos como método alterno válido en <u>Pagán</u>.


II

Ahora bien, lo anterior no dispone del caso hoy ante nuestra consideración; ello en vista de que, como mencionamos anteriormente, estando pendiente el presente caso ante Hacienda, entró en vigor la antes citada Ley

Núm. 209. La Asamblea Legislativa aprobó dicha Ley a los fines de disponer que transcurridos diez (10) años desde que una deuda fue debidamente tasada para el cobro, y estando la misma prescrita para el apremio y el cobro judicial de acuerdo con las disposiciones del propio Código de Rentas Internas, después de transcurrir el término de siete (7) años la misma debe ser eliminada de los récords contributivos. Exposición de Motivos Ley Núm. 209; Informe de la Comisión de Hacienda de la Cámara de Representantes con respecto al Proyecto 537, del 25 de junio de 1998.

Específicamente, la aludida pieza legislativa tuvo la intención de corregir la situación con respecto a los récords contributivos de los contribuyentes en Hacienda. Se destacó que "[l]os récords contributivos de muchos contribuyentes reflejan deudas que fueron supuestamente aclaradas durante los períodos de amnistía contributiva, otros porque a[d]vinieron en conocimiento de supuestas deudas contributivas pasados más de diez (10) años de la misma haber sido tasada, sin que el contribuyente ni el Departamento de Hacienda tuvieran más evidencia de donde surge la deuda excepto por la información que se desprende de la certificación de deuda; esto es, tipo de contribución, cantidad, número de recibo y fecha de imposición. Pero la razón que motivó el ajuste, error matemático o deficiencia simplemente se desconoce tanto por el contribuyente como por el Departamento de

Hacienda". Exposición de Motivos Ley Núm. 209; <u>Informe de la Comisión de Hacienda de la Cámara de Representantes con respecto al Proyecto 537</u>, del 25 de junio de 1998.

Particularmente, se indicó que aun cuando conforme al Código de Rentas Internas el Secretario de Hacienda está impedido de exigir el cobro de las aludidas deudas por la vía de apremio y de cobro judicial luego de transcurridos siete años desde que la mismas fueron debidamente impuestas y tasadas, las mismas no son eliminadas de los récords del contribuyente. En virtud de lo anterior, aun cuando la deuda no es exigible, ésta continúa reflejándose en cualquier certificación de deuda del contribuyente. Exposición de Motivos Ley Núm. 209; <u>Informe de la Comisión de Hacienda de la Cámara de Representantes con respecto al Proyecto 537</u>, del 25 de junio de 1998.

Concretamente, se indicó que "[l]a <u>razón</u> por la cual el Departamento de Hacienda <u>no</u> elimina la deuda de los récords del contribuyente era porque la Ley de Contabilidad del Gobierno de Puerto Rico establecía que las deudas contributivas podían ser compensadas a través de cualquier pago que el Gobierno viniera obligado a hacer al contribuyente <u>y que no existía un término prescriptivo para efectuar esta compensación, según lo resuelto en Pagán v. Tribunal de Contribuciones, ante</u>". Exposición de Motivos Ley Núm. 209; <u>Informe de la Comisión de Hacienda</u>

de la Cámara de Representantes con respecto al Proyecto 537, del 25 de junio de 1998.

Para lograr el antes mencionado objetivo, se enmendó el Artículo 6006 (d) del Código de Rentas Internas con el propósito específico de establecer que "No obstante lo dispuesto en la Ley Núm. 230 de 23 de julio de 1974, según enmendada, conocida como "Ley de Contabilidad del Gobierno de Puerto Rico", el Secretario procederá a eliminar de los récords de los contribuyentes incluyendo a los empleados públicos, y quedará impedido de cobrar aquellas deudas impuestas por este Código o leyes anteriores de la cuales ya han transcurrido diez (10) años desde que fueron tasadas. Disponiéndose a los fines de determinar el período de prescripción, se tomará en cuenta cualquier interrupción en dicho período.

Del historial legislativo de la Ley Núm. 209 surge que el legislador tuvo la intención de corregir una situación como la del presente caso en la cual el contribuyente, luego de transcurridos varios años, es que se entera de la existencia de una deuda contributiva con el erario donde no existe más evidencia que la existencia de la aludida deuda en la certificación de deuda. Sin lugar a dudas, el beneficio de la aplicación de esta Ley a los hechos del presente caso haría que el Secretario de Hacienda estuviera imposibilitado de cobrarle a Díaz Rivera la deuda aquí en controversia.

Ahora bien, al establecer la vigencia de la Ley Núm. 209, la Legislatura precisó que la misma entraría en vigor a los ciento ochenta (180) días después de su aprobación, es decir el 5 de febrero de 1999. Art. 3 de la Ley 209. Específicamente, se dispuso además que "[l]as deudas relacionadas con los descuentos de sueldos y los planes de pagos vigentes, serán cobradas y mantendrán todo su vigor aún después de la aprobación de esta ley". Art. 2 de la Ley Núm. 209.

Como vemos del historial legislativo de la aludida ley y de su texto claramente se desprende que la misma <u>no</u> es de aplicación a descuentos y planes de pago que estuvieran vigentes al aprobarse la mencionada Ley, como lo era el de Díaz Rivera, el cual fue efectuado el 26 de octubre de 1988. No debemos olvidar que el Artículo 3 del Código Civil, 31 L.P.R.A. § 3, establece, en lo aquí pertinente, que como norma general las leyes no tienen efecto retroactivo, a menos que <u>expresamente</u> se disponga lo contrario, y aun así, no pueden menoscabar obligaciones contractuales ni perjudicar derechos adquiridos al amparo de una legislación. Conforme a lo anterior, este Tribunal ha expresado que la intención de la Asamblea Legislativa de darle efecto retroactivo a una ley por ser la excepción a la regla <u>debe aparecer expresamente o surgir claramente del estatuto</u>. Véase <u>Vázquez</u> v. <u>Morales</u>, 114 D.P.R. 822 (1983).

Conforme a lo anteriormente expresado, somos del criterio que la Ley Núm. 209 no es de aplicación a los hechos del presente caso toda vez que la Asamblea Legislativa no dispuso su aplicación retroactiva. Siendo esto así, conforme al derecho vigente al 26 de octubre de 1998, el Secretario estaba autorizado a realizar la retención de $2,400 de la liquidación de vacaciones de Díaz Rivera. En vista de que el Secretario de Hacienda estaba autorizado para llevar a cabo la antes mencionada retención, no hay duda de que no constituyó, como aduce el peticionario, una confiscación en violación a la cláusula del debido proceso de ley. Tal actuación estuvo fundamentada en una facultad expresamente reconocida por la Asamblea Legislativa.

II

Como último señalamiento de error el peticionario arguye que se le violó el debido proceso de ley durante el procedimiento administrativo y durante los procedimientos ante el foro primario. Entre otras cosas, argumenta que se le violó el debido proceso de ley toda vez que el tribunal de instancia dictó sentencia en corte abierta durante una vista en la cual no estuvo presente debido a que nunca se le notificó privándosele de esta forma de la oportunidad de una vista judicial. A tales efectos, señala que el foro primario emitió su sentencia en una vista del 17 de marzo de 2003, notificada a las partes el 18 de marzo de 2003.

Alega que en la minuta de ese día se hizo constar que se llamó el caso de epígrafe para una conferencia sobre el estado de los procedimientos y que ninguno de los abogados compareció. A su vez, señala que incorrectamente se expresó en la minuta que para ese día Díaz Rivera no había presentado su oposición. No le asiste la razón.

Este Tribunal ha señalado que "el debido proceso de ley encarna la esencia de nuestro sistema de justicia. Su prédica comprende los elevados principios y valores que reflejan nuestra vida en sociedad y el grado de civilización alcanzado." López Santos v. Asoc. de Taxis de Cayey, 142 D.P.R. 109, 112-113 (1996). Reiteradamente hemos establecido que el debido proceso de ley cuenta con dos vertientes: la sustantiva y la procesal. La dimensión sustantiva del debido proceso de ley, persigue salvaguardar los derechos fundamentales de la persona. Por otra parte, la vertiente procesal, el aludido precepto le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento que en esencia sea justo, equitativo y de respeto a los individuos afectados. López Vives v. Policía de Puerto Rico, 118 D.P.R. 219, 231 (1987).

Particularmente para que todo procedimiento cumpla con el debido proceso de ley, en su dimensión procesal, hemos establecido varios requisitos. Entre éstos, están: a) notificación adecuada del proceso; b) proceso ante un

juzgador imparcial; c) oportunidad de ser oído; d) derecho a contrainterrogar testigos y examinar la evidencia presentada en su contra; e) tener asistencia de abogado y f) que la decisión se base en el expediente del caso. López Santos v. Asociación de Taxis de Cayey, 142 D.P.R. 109, 113-114 (1996); Feliciano Figueroa v. Toste Piñero, 134 D.P.R. 909, 914-915 (1993).

No hay duda que Díaz Rivera tenía derecho a ser oído para defenderse y presentar su caso en un proceso con las garantías adecuadas. Específicamente, entre estas garantías, tenía derecho a presentar toda la prueba necesaria para sostener su reclamo, así como refutar oralmente o por escrito la evidencia sometida en su contra. Lo anterior efectivamente ocurrió en el presente caso.

Cónsono con lo anterior, es preciso señalar que surge de una minuta del 22 de enero de 2003 que en ese día, durante una conferencia anterior sobre el estado procesal del caso, en la cual estuvo presente el representante legal de Díaz Rivera, se señaló una conferencia sobre el estado procesal para el 19 de febrero de 2003. Específicamente, la referida minuta fue notificada a las partes el 13 de febrero de 2003. En virtud de lo anterior, resulta sorprendente la alegación del peticionario a los efectos de que no estuvo presente en la vista debido a que nunca se le notificó la misma.

De otra parte, ciertamente en la minuta de la vista del 19 de febrero de 2003 se hizo constar que se estaba tomando la determinación de declarar con lugar la sentencia sumaria a favor de Hacienda sin el beneficio de la oposición a la sentencia sumaria. Ahora bien, surge del escolio número 3 de la sentencia que posteriormente redactara el tribunal de instancia que el 20 de marzo de 2003 --fecha posterior a la vista sobre el estado del caso-- el peticionario había presentado su oposición a la aludida solicitud de sentencia sumaria. A esos efectos, el tribunal señaló que había examinado la misma. Así pues, fue luego de examinar las posiciones y solicitudes de ambas partes que el foro primario emitió sentencia sumaria a favor de Hacienda. Por lo tanto, aun cuando la sentencia se emitió sumariamente se le dio oportunidad a Díaz Rivera a que expresara su posición.

Como es sabido, la sentencia sumaria es un mecanismo procesal extraordinario y discrecional que tiene como objetivo facilitar la solución justa y rápida de los litigios y casos civiles que no presentan controversias genuinas de hechos materiales. E.L.A. v. Cole Vázquez, res. el 13 de abril de 2005, 2005 TSPR 46. Dicho mecanismo está expresamente regulado por la Regla 36 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36, la cual establece que podrá dictarse una sentencia sumaria cuando de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las

declaraciones juradas, no exista una controversia real sobre los hechos materiales y esenciales del caso en cuestión. Por ello, cuando exista la más mínima duda o controversia sobre hechos materiales o esenciales del caso, el tribunal denegará la sentencia sumaria y deberá celebrar un juicio en su fondo. López Colón v. Hon. Miranda Marín, res. el 16 de diciembre de 2005, 2005 TSPR 197; Sucn. de Gregorio Maldonado Ortiz v. Sucn. De Francisco Maldonado Hernández, res. el 9 de noviembre de 2005, 2005 TSPR 166; E.L.A. v. Cole Vázquez, ante.

Predicado en ello, hemos reiterado que al considerar una moción de sentencia sumaria el foro primario tendrá como ciertos los hechos no controvertidos que consten en los documentos y las declaraciones juradas presentadas por la parte promovente. López Colón v. Hon. Miranda Marín, ante; Piñero González v. A.A.A., 146 D.P.R. 890 (1998). De tal modo, cuando de los documentos no controvertidos que se acompañan surge que no existe una legítima disputa de hecho a ser dirimida, que sólo resta aplicar el derecho y que no se ponen en peligro los intereses de las partes, se dictara sentencia sin necesidad de que se celebre una vista en los méritos. López Colón v. Hon. Miranda Marín, ante; Audiovisual Lang. v. Est. Natal, 144 D.P.R. 563 (1997). Claro está, tomando en consideración que la sentencia sumaria es un remedio de carácter discrecional, "el sabio discernimiento es el principio rector para su uso porque, mal utilizada, puede prestarse para despojar a

un litigante de 'su día en corte, principio elemental del debido proceso de ley'". Management Aministration Services Corporation v. Estado Libre Asociado de Puerto Rico, 152 D.P.R. 599, 611 (2000); Córdova v. Larín, 151 D.P.R. 192 (2000); Roig Com. Bank v. Rosario Cirino, 126 D.P.R. 613, 617 (1990).

Por ello el tribunal de instancia al dictar sentencia sumaria: (1) analizará los documentos que acompañan la moción solicitando la sentencia sumaria y los documentos incluidos con la moción en oposición y aquellos que obren en el expediente del tribunal; y (2) determinará si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. Management Aministration Services Corporation v. Estado Libre Asociado de Puerto Rico, ante, a la pág. 611; PFZ Props., Inc. v. Gen. Acc. Ins. Co., 136 D.P.R. 881 (1994).

Ciertamente en el presente caso el foro primario no abusó de su discreción al resolver el caso sumariamente toda vez que no existía controversia con respecto al momento en que se había efectuado la retención y cuando efectivamente entró en vigor la Ley Núm. 209. Era una cuestión estrictamente de derecho determinar si aplicaba a los hechos del presente caso el beneficio de la Ley Núm. 209.

Finalmente, alega el peticionario que tanto durante el procedimiento administrativo como durante el

procedimiento ante el tribunal de instancia se le violó el debido proceso de ley debido a que no se le dio la oportunidad de presentar otros argumentos.

Luego de un examen minucioso del expediente que obra ante nos no encontramos escrito alguno en el cual el peticionario señale específicamente cuáles son estos argumentos que no se le han dejado presentar, sobre todo cuando a través de todo el procedimiento el fundamento jurídico que ha utilizado para impugnar la retención es la prescripción de la deuda y la inexistencia de un mecanismo alterno en ley para cobrar la misma.

Aun asumiendo, a los fines de la argumentación, que es correcto que Díaz Rivera no tuvo la oportunidad de refutar durante el procedimiento administrativo la alegada inexistencia de la deuda debido a que no se le permitió presentar los argumentos a esos efectos, no hay duda que pudo haberlos presentado ante el foro primario. El presente caso no trata meramente de una revisión administrativa sino de un juicio de novo ante el Tribunal de Instancia. Siendo ello así, Díaz Rivera tuvo la oportunidad de presentar toda la prueba que considerara pertinente y los argumentos que considerara aplicables al caso. No obstante lo anterior, de una lectura de los documentos presentados por éste ante el foro primario se desprende que nuevamente basó su posición en el argumento

de la prescripción de la deuda y de la inexistencia de un mecanismo válido en ley para el cobro de la misma.[8]

Más aun en este momento nos señala que todavía desconoce de la naturaleza de la contribución que se le cobra razón por la cual no ha podido presentar evidencia con respecto a la inexistencia de la alegada deuda. Surge de la carta que le envió Hacienda el 26 de octubre de 1998 --la cual el peticionario no niega haber recibido-- que la alegada deuda del año 1982 que tenía Díaz Rivera con el erario era por concepto de una contribución sobre ingresos. No hay duda que a través de la referida misiva Hacienda le comunicó a Díaz Rivera la naturaleza de su alegada deuda. No obstante saber el origen de su deuda en ningún momento el peticionario ha promulgado fundamento específico alguno para indicar la inexistencia de la deuda aquí en cuestión.

En virtud de todo lo antes expuesto, resolvemos que procede confirmar la sentencia emitida por el Tribunal de Apelaciones.

---

[8] Con respecto a lo anterior, basta con señalar que en su apelación ante el foro apelativo intermedio el peticionario expresamente reconoció que el fundamento de su reclamación era "ha sido y continúa siendo que en nuestro ordenamiento jurídico, todo acreedor, incluyendo el Departamento de Hacienda está impedido de cobrar aquellos créditos que jurídicamente estén prescritos. Esto es precisamente lo que ha hecho el Departamento de Hacienda en este caso. Hacienda ha cobrado de forme ilegal una deuda prescrita y por ello procede la devolución de este cobro efectuado en violación de ley".

Se dictará Sentencia de conformidad.

FRANCISCO REBOLLO LÓPEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Blas D. Díaz Rivera

    Peticionario

        vs.                            CC-2004-435       CERTIORARI

Secretario de Hacienda

    Recurrido

SENTENCIA

San Juan, Puerto Rico, a 18 de mayo de 2006

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia confirmatoria de emitida en el presente caso por el Tribunal de Apelaciones.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri disintió sin opinión escrita. El Juez Asociado señor Rivera Pérez no intervino.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo