FRANCISCO BIANCHI ROSAFA, demandante y apelado, *v.* MANUEL V. DOMENECH, en su carácter de TESORERO DE PUERTO RICO, demandado y apelante.

No. 6101.—*Sometido:* Abril 28, 1933. *Resuelto:* Junio 26, 1934.

*Hon. Procurador General Benjamin J. Horton (Charles E. Winter* en el alegato) y *M. Rodríguez Serra, Procurador General Auxiliar,* abogados del apelante; *Frank Martínez y Frank Bianchi,* abogados del apelado.

58

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

Este caso guarda estrecha relación con el recurso No. 6100, *Juan Bianchi Rosafa* v. *Manuel V. Domenech, Tesorero de Puerto Rico,* que acabamos de resolver. Se tramitó, sin embargo, separadamente y de igual modo lo estudiaremos y resolveremos.

██ En la demanda se pide la devolución de $8,345.92 pagados bajo protesta por el demandante por contribución sobre ingresos impuéstale por el Tesorero de acuerdo con una planilla adicional rendida en mayo 5, 1920 como consecuencia de una investigación practicada por el Tesorero y que comprende los ingresos no declarados originalmente correspondientes al año natural de 1917.

El hecho XII de la demanda dice:

"XII. Alega el demandante que la contribución así impuesta y cobrada (*collected*) a dicho demandante, es errónea e ilegal y la misma ha prescrito y es inexistente por las siguientes razones:

"1.—Que han pasado más de cinco (5) años, a saber, diez años, desde que la planilla fué radicada por el demandante en el Departamento de Hacienda de Puerto Rico, hasta la fecha en que dicho Departamento de Hacienda de Puerto Rico cobró (*collected*) del demandante dicha contribución.

"2.—Que han pasado más de seis (6) años—a saber—ocho años, desde que la contribución fué impuesta al demandante por el Departamento de Hacienda de Puerto Rico, hasta la fecha en que dicho Departamento de Hacienda de Puerto Rico cobró (*collected*) del demandante dicha contribución.

"3.—Que de acuerdo con las Leyes Federales, bajo las cuales se impuso esta contribución al demandante, la misma está prescrita y es inexistente.

"4.—Que de acuerdo con la Ley Federal en virtud de la cual se impuso la contribución al demandante, dicha contribución quedó prescrita e inexistente a los efectos de su cobro, a los cinco años de la planilla haber sido radicada por el demandante, es decir, en mayo 5 de 1925.

"5.—Que de acuerdo con las Leyes Federales y la jurisprudencia que interpreta la misma, la contribución sobre ingresos impuesta al demandante no podría ser legalmente cobrada (*collected*) por el

Tesorero de Puerto Rico en septiembre 17 de 1930, y el pago bajo protesta hecho por dicho demandante en la mencionada fecha es considerado un pago bajo compulsión (*duress*) y puede ser recobrado mediante un procedimiento judicial.

"6.—Que de acuerdo con nuestra propia ley, las contribuciones sobre ingresos deben ser impuestas (*assessed*) y cobradas (*collected*) dentro de los cinco (5) años después de radicarse la planilla a que las mismas se refieren, y las contribuciones no pueden ser cobradas (*collected*) después de vencido dicho período.

"7.—Que nuestra ley prescribe que las contribuciones sobre ingresos sólo podrán ser cobradas mediante embargo o cualquier procedimiento judicial dentro de los seis años después de impuestas (*assessed*) dichas contribuciones.

"8.—Que tanto bajo las Leyes Federales (que son las que rigen en nuestro caso) como bajo nuestra propia ley, la contribución sobre ingresos fué cobrada (*collected*) del demandante errónea e ilegalmente, por la misma haber prescrito y estar inexistente."

Excepcionó y contestó el demandado. En la contestación se aceptan algunos hechos, se niegan otros y se establecen defensas especiales. El hecho 7°. de las defensas especiales dice:

"7mo.—El demandado alega que la alegación de prescripción contenida en la demanda no debe prosperar por las siguientes razones:

"*a*.—Porque la planilla original rendida no era correcta ni ajustada a la verdad porque no incluía todos los ingresos recibidos por el contribuyente durante el año contributivo correspondiente.

"*b*.—Porque en la investigación practicada al efecto el Departamento de Hacienda descubrió considerables cantidades recibidas como ingresos por concepto de beneficios distribuídos de una sociedad de la que formaba parte el contribuyente, ingresos que hasta entonces no habían sido revelados (*undisclosed*) por el propio contribuyente.

"*c*.—Porque fué necesario en virtud de tal actitud del demandante preparar la planilla adicional de dichos ingresos.

"*d*.—Porque el contribuyente suscribió bajo juramento, sin protesta alguna, la planilla adicional preparada de oficio por el Inspector de Rentas Internas, Sr. Roig, en la cual se hacían constar gruesas sumas de ingresos que el contribuyente había obtenido por beneficios distribuídos por Sucrs. de Bianchi, que hasta entonces había mantenido ocultos (*undisclosed*) el demandante.

"*e*.—Que adoleciendo la planilla original de la falta alegada de no ajustarse a la verdad, el derecho de prescripción no puede ser

invocado por el contribuyente contra el Tesorero de Puerto Rico de acuerdo con la ley.

"*f*.—Que el mero hecho de suscribir el demandante sin protesta dicha planilla adicional es equivalente a un '*formal statement*' del contribuyente que le impide alegar la prescripción.

"*g*.—Que desde que se presentó la planilla original hasta que se radicó la adicional no transcurrieron 3 años, sino transcurrieron 2 años 1 mes."

Finalmente las partes sometieron el caso a la decisión de la corte mediante la siguiente estipulación sobre los hechos:

"2do.—La planilla No. 9 corresponde al año contributivo 1917, a virtud de la Ley Federal de 8 de septiembre de 1916, enmendada en 3 de octubre de 1917.

"3ro.—Dicha planilla fué firmada y radicada por el demandante ante un Inspector del Departamento de Hacienda en mayo 5 de 1920. Con anterioridad a esa fecha el demandante había rendido una planilla No. 9 correspondiente al año contributivo de 1917, la cual no incluía todas las cantidades que debiera, respecto al ingreso bruto recibido durante el año por el demandante, de acuerdo con las disposiciones de la Ley Federal de 8 de septiembre de 1916 y enmendada en octubre 3 de 1917.

"4to.—Dicha planilla No. 9 preparada por el Inspector del Departamento de Hacienda, lo fué como resultado de una investigación que el mismo Inspector practicara de las operaciones y negocios de la firma Sucrs. de Bianchi, a la que pertenecía el demandante como socio durante el año 1917.

"5to.—Aun cuando la contribución, cuya devolución se trata de obtener, fué causada por una planilla o declaración de ingresos adicional o enmendada, preparada de oficio por un Inspector del Departamento de Hacienda de Puerto Rico, de acuerdo con los resultados de una investigación que se le ordenara practicar de las operaciones de la firma Sucrs. de Bianchi, de la cual firma el demandante era parte como socio, la misma planilla fué firmada bajo juramento por el propio contribuyente voluntariamente sin oposición ni protesta. Dicha planilla enmendada o adicional incluía los beneficios que había declarado el contribuyente en la primera planilla No. 9 correspondiente al año natural de 1917 que suscribió y juró el propio contribuyente ante el Colector de Rentas Internas de Mayagüez, y además incluía otros beneficios distribuídos por la firma Sucrs. de Bianchi, montantes a $86,795.88, los cuales el demandante

no había declarado ni incluído en la planilla original correspondiente a dicho año.

"6to.—De acuerdo con la planilla originalmente presentada y jurada por el contribuyente ante el Colector de Rentas Internas de Mayagüez, se le impuso una contribución por la suma de $333.71, y de ella se notificó al demandante el 29 de mayo de 1918. La segunda planilla No. 9, o sea aquella en que se incluyeron ingresos montantes a $86,795.88, no incluídos en la anterior planilla, fué suscrita voluntariamente y bajo juramento por el propio contribuyente ante el Inspector de Rentas Internas, Sr. Roig, en 5 de mayo de 1920.

"7mo.—En julio 10, 1922 de acuerdo con dicha planilla el Tesorero de Puerto Rico impuso al demandante, por concepto de contribuciones sobre ingresos, a virtud de la arriba mencionada Ley Federal de septiembre 8 de 1916, enmendada en octubre 3 de 1917, la cantidad de $4,113.99.

"8vo.—Al notificarse al contribuyente que debía pagar, según la mencionada planilla enmendada o adicional, la suma de $4,447.70, acreditándosele los $333.71 que había pagado el contribuyente según la planilla original, recibo No. 5, quedando por tanto un saldo a favor del Tesoro de $4,113.99, el contribuyente solicitó la reconsideración, la que fué denegada.

"9no.—El 10 de julio de 1922 agotados los recursos el contribuyente, se le notificó y se le requirió que hiciera efectiva la contribución el día 20 de dicho mes y año. El 4 de agosto de 1922 fué nuevamente requerido de pago, además se le notificó del importe de la contribución, de los recargos e intereses que elevaron la suma adeudada a $4,360.83.

"10mo.—El 26 de julio de 1922 el contribuyente representado por el abogado Sr. J. J. Ortiz Alibrán, alegó por escrito la prescripción del derecho del Departamento de Hacienda al cobro de la contribución y solicitó la cancelación del recibo No. 5 A por la suma de $4,113.99, más recargos e intereses, o sean $4,360.83. El Tesorero de Puerto Rico en agosto 8 de 1922 negó la solicitud de cancelación fundándose en que no habían mediado 3 años desde el 30 de marzo de 1918, fecha de la radicación de la planilla original y el 5 de mayo de 1920, en que se presentó la planilla enmendada.

"11º.—Posteriormente, el demandante utilizó los servicios profesionales del abogado Sr. Cayetano Coll y Cuchí para detener mediante varias peticiones de suspensión y de investigación la acción de cobro de dicha contribución por parte del Tesorero de Puerto

Rico. Además utilizó más tarde también las gestiones del Sr. José A. Fábregas para detener por medio de recursos administrativos la acción de cobro.

"12º.—El 13 de octubre de 1923 los Inspectores del Departamento de Hacienda, comisionados para practicar la investigación que se ordenara a solicitud del abogado Sr. Coll y Cuchí a nombre del contribuyente, informaron al Departamento de Hacienda que no habían podido practicarla porque el contribuyente les dijo que los libros de la Sociedad Sucrs. de Bianchi habían sido destruídos en el Terremoto de 1918.

"13º.—En 24 de septiembre de 1925, a instancias del demandante el Tesorero de Puerto Rico suspendió nuevamente la subasta de los bienes embargados al demandante que había sido señalada para el 8 de octubre de 1925.

"14º.—En julio de 1927 el demandante interpuso recurso de alzada ante la Junta de Revisión e Igualamiento alegando en dicho recurso de alzada que la contribución sobre ingresos impuesta al demandante estaba prescrita de acuerdo con la ley.

"15º.—En marzo 11 de 1930 el Secretario de la Junta de Revisión e Igualamiento notificó al demandante que no se le podía dar curso a dicha alzada por haber sido radicada fuera de término.

"16º.—En junio de 1930 el Tesorero de Puerto Rico, a nombre de El Pueblo de Puerto Rico, embargó bienes inmuebles del demandante; dichos bienes inmuebles hubiesen sido vendidos en pública subasta si la contribución impuesta no era satisfecha por el demandante y para evitar la venta en pública subasta el demandante pagó bajo protesta la contribución impuesta.

"17º.—Durante todo este tiempo en que dicha planilla fué radicada en el Departamento de Hacienda de Puerto Rico y hasta el 17 de septiembre de 1930, el demandante no ha pagado ni al Tesorero de Puerto Rico ni a ningún oficial o empleado del Departamento de Hacienda la cantidad que se reclama en la demanda."

La corte de distrito decidió el pleito en favor del contribuyente y el Tesorero interpuso contra su sentencia el presente recurso de apelación.

No obstante haberse hecho constar en la estipulación que "en 24 de septiembre de 1925, a instancias del demandante el Tesorero *suspendió nuevamente* la subasta de los bienes embargados al demandante," (bastardillas nuestras), lo que parece implicar que otra subasta fué anteriormente suspen-

dida y por tanto que con anterioridad a esa fecha se había comenzado el procedimiento de apremio para el cobro de la contribución, es lo cierto que de los hechos estipulados que sirvieron de base al fallo de la corte ningún dato exacto surge que permita fijar la fecha en que el procedimiento de apremio comenzó.

Siendo ello así, bien se cuente el término de cinco años a partir de la fecha en que se rindió la planilla original, bien se compute tomando como base el 5 de mayo de 1920, es necesario concluir que había vencido en la única fecha en que en la estipulación se habla de embargo y subasta, septiembre 24, 1925.

Se habla sí en la estipulación de haberse notificado la contribución el 10 de julio de 1922, de haberse requerido de pago nuevamente al contribuyente en 4 de agosto de 1922, de haberse detenido las gestiones de cobro a virtud de petición del contribuyente por medio de su abogado Coll y Cuchí y de José A. Fábregas, pero ello no es suficiente para poder concluir de acuerdo con la jurisprudencia que se hubiera iniciado el procedimiento de apremio para el cobro de la contribución.

En el caso de *Bowers* v. *N. Y. & Albany Co.*, 273 U. S. 346, en el que la Corte Suprema nacional concluyó que la acción del colector para el cobro de las contribuciones había prescrito, al comenzar la opinión se narran los hechos de uno de los tres casos considerados, como sigue (bastardillas nuestras):

"En el caso No. 366 el querellado archivó con fecha 26 de marzo de 1918 su planilla de ingresos y de utilidades en exceso para el año 1917 y pagó la suma que según ésta adeudaba. *Poco antes de expirar el período de cinco años* contado a partir del archivo de la planilla *el Comisionado impuso y el colector exigió el pago adicional de contribuciones* sobre ingresos y por utilidades en exceso. El querellado se negó a pagarlas. *Más de cinco años después de archivada la planilla el colector se incautó* y vendió bienes muebles del querellado para pagar la suma reclamada."

Se ve, pues, que no obstante haberse hecho la tasación y haber el Comisionado exigido el pago adicional dentro de los cinco años, no se consideró iniciado el procedimiento de apremio dentro de dicho período, y es que dicho procedimiento sólo se considera iniciado cuando se embargan bienes del contribuyente para el cobro de la contribución.

Así se desprende de lo prescrito en los artículos 334 y 335 del Código Político. Se refiere el primero al aviso que debe dar el colector al contribuyente moroso, y dispone el segundo:

"Art. 335.—Si alguna persona descuidase o rehusase verificar el pago de sus contribuciones dentro del período establecido en el artículo 334 de este Título, el colector, el sub-colector u otro agente debidamente autorizado por el Tesorero, procederá después de obtenido el consentimiento escrito del Tesorero, al cobro de las mismas, mediante embargo y venta de la propiedad de dicho deudor, en la forma que más adelante se prescribe."

La notificación por sí sola no inicia el procedimiento de cobro. Este se verifica mediante embargo y venta de la propiedad del deudor.

Siendo ésa la interpretación que debe darse a los hechos y la ley en este caso y no surgiendo a nuestro juicio de la estipulación cuestión alguna de falsedad o fraude, *debe declararse sin lugar el recurso y confirmarse la sentencia apelada.*

El Juez Asociado Señor Córdova Dávila no intervino.