BOLÍVAR PAGÁN, peticionario, *v.* TRIBUNAL DE CONTRIBUCIONES DE PUERTO RICO, demandado; TESORERO DE PUERTO RICO, interventor.

Núm. 263.—*Sometido:* Abril 1, 1952. *Resuelto:* Agosto 6, 1952.

*Bolívar Pagán, pro se; Hon. Procurador General Víctor Gutié-*
*rrez Franqui y Manuel J. Medina Aymat, Procurador Gene-*
*ral Auxiliar,* abogados del interventor, demandado en el
pleito principal.

EL JUEZ PRESIDENTE SEÑOR TODD, JR., emitió la opinión del
tribunal.

En su querella enmendada radicada ante el Tribunal de
Contribuciones de Puerto Rico, el peticionario alegó, sustan-
cialmente, que en los años 1949 y 1950 el Tesorero y el Au-
ditor de Puerto Rico, querellados, descontaron y retuvieron
parcialmente los haberes devengados por el peticionario por
concepto de su salario como miembro del Senado Insular,
durante un número de meses consecutivos, en un total de
descuentos y retenciones montante a $1,733.26; que los que-
rellados descontaron y retuvieron la cantidad expresada bajo
el pretexto de que el querellante tenía una deuda de "income
tax" con el Gobierno de Puerto Rico; que dichas contribu-
ciones fueron impuestas y tasadas durante los años 1925 a
1933, y, después de estos años y con anterioridad a los des-
cuentos y retenciones alegados, el Tesorero no había cobrado
al querellante dichas contribuciones, ni había hecho gestiones
para advertir, notificar, ni cobrar las mismas, por lo cual di-
cha supuesta deuda estaba prescrita en el año 1949 y en el año
1950, y además, que los querellados carecían de autoridad
legal para cobrar las mismas en el año 1949 y en el año 1950,
de acuerdo con lo provisto en los artículos 60 y 61 de la Ley
de Contribuciones sobre Ingresos de Puerto Rico aprobada
en 1925 y según ésta quedó posteriormente enmendada, y,
en su consecuencia, solicitó la devolución de la referida
cantidad.

Los querellados, en su contestación a la querella enmen-
dada, negaron específicamente que las contribuciones en con-
troversia estuvieren prescritas y fueran inexistentes en ley,
o que el Tesorero careciera de autoridad legal para cobrarlas.

Antes de empezar la presentación de la prueba el Tribunal de Contribuciones aprobó una estipulación sometida por las partes al efecto de que "el Tesorero no ha iniciado ni ha proseguido ningún otro recurso, que no sea el de la retención de los haberes del peticionario a que se refiere este pleito, para el cobro de las contribuciones envueltas en este caso."

Después de celebrada la vista del caso, el Tribunal de Contribuciones dictó sentencia en 29 de junio de 1951 decretando "no haber lugar a ordenar a los demandados Tesorero y Auditor de Puerto Rico que paguen al demandante los haberes completos de su sueldo como Senador de Puerto Rico que han sido o son objeto de descuentos y retenciones, ni a ordenar que se anulen y se cancelen las retenciones ya hechas de tales sueldos que motivaron este pleito..."

Expedimos auto de *certiorari* para revisar la resolución del Tribunal de Contribuciones.

En el primer señalamiento el peticionario alega que el Tribunal de Contribuciones erró "al resolver que el cobro de las contribuciones objeto de este pleito no había prescrito, y que el Tesorero tenía facultad para cobrarlas". En apoyo de su contención el peticionario descansa en las disposiciones de la sección 61 (c) de la Ley de Contribuciones sobre Ingresos [1].

Recurre el peticionario al texto inglés de la Ley núm. 74 de 9 de mayo de 1937 (Leyes de 1936-37, pág. 207) que enmendó la sección 61 (c), tal como la misma rige en la actualidad, para sostener que la acción del Tesorero al coger bienes o salarios devengados valiéndose de la oficina del Auditor al amparo de las disposiciones del artículo 124 del Código

[1] La sección 61 (c) dispone lo siguiente:

"Cuando se impusiere la contribución dentro del término prescrito en la sección 60 o en esta sección, dicha contribución podrá ser cobrada mediante embargo o procedimiento judicial entablado dentro de los diez años después de impuesta la contribución. Nada de lo contenido en esta Ley se interpretará en el sentido de evitar que empiece sin tasación el procedimiento judicial para el cobro de la contribución, en cualquier momento antes del vencimiento del período dentro del cual la tasación pudiera ser hecha."

Político, (²) es un acto de *"distraint"* (³) para efectuar el cobro de contribuciones después de haber prescrito el término provisto por la ley para cobrarlas. Al recurrir al texto inglés el peticionario sostiene que así lo hace porque existe discrepancia con el texto español al utilizarse el vocablo "embargo" como una traducción incorrecta de *"distraint"*. El vocablo "apremio" sería una traducción correcta de la palabra *"distraint"*. *Bianchi* v. *Domenech, Tesorero*, 47 D.P.R. 41, 53, en el que se cita el de *Bowers* v. *N. Y. & Albany Co.*, 273 U. S. 346; véase además la sección 83 de la Ley de Contribuciones sobre Ingresos. (⁴) El procedimiento de apremio (*distraint*) es análogo o equivalente al de embargo. *Bianchi* v. *Dome-*

(²) El artículo 124 del Código Político dice así:

"Artículo 124.—*Pago de sueldo o reclamación.—Abonos de cantidades retenidas.*—No se pagará dinero a ninguna persona por concepto de salario, o reclamación entablada contra la Tesorería Insular, si el interesado se hallare en descubierto con El Pueblo de Puerto Rico, por deudas atrasadas, y así consta en los libros del Contador, mientras no hubiere aquél arreglado sus cuentas con el Tesorero de Puerto Rico y satisfecho a éste todas las cantidades de las cuales fuere responsable; *Disponiéndose*, que por razones suficientes y siempre que los intereses del Gobierno Insular resultaren con ello beneficiados, podrán hacerse los necesarios pagos de retribución o salario devengado por personas en descubierto con El Pueblo de Puerto Rico, que continúan en el servicio del Gobierno Insular, mediante la recomendación del Contador, aprobada por el Gobernador.

"En todos los casos en que la paga o salario de alguna persona, o una cantidad por reclamación reconocida como buena contra El Pueblo de Puerto Rico, se retuviere en cumplimiento de este artículo, deberá el Contador abonar a cuenta de la deuda o persona alcanzada la cantidad así retenida o la parte de ella que fuere necesaria para satisfacer o extinguir dicha deuda."

(³) En la parte pertinente el texto inglés dice así:

"...such tax may be collected by distraint [en el texto español dice 'embargo'] or by proceeding in court, begun within ten years after the assessment of the tax. ..."

(⁴) La sección 83 dice así:

"Las contribuciones impuestas por esta Ley, y sus penalidades, recargos e intereses, constituirán en todos los casos un crédito preferente a favor de El Pueblo de Puerto Rico sobre la propiedad mueble e inmueble y derechos reales del contribuyente, desde y después de la fecha de la publicación de tal contribución en la oficina del Colector de Rentas Internas de la municipalidad, y dichas contribuciones serán cobradas por el Tesorero de Puerto Rico del mismo modo y mediante el mismo procedimiento de *apremio* establecido por la Ley actual para el cobro de contribuciones sobre la propiedad." (Bastardillas nuestras.)

*nech, Tesorero*, 47 D.P.R. 57; notas en 84 U.Pa.L.Rev. 262 y 45 Yale L.J. 945; 9 Mertens, *Law of Federal Income Taxation*, sección 49.149, pág. 127. Por tanto, la sección 61(c), supra, impediría cualquiera de los dos procedimientos—el de apremio o el judicial—para el cobro de una contribución, que se comenzara después del período de diez años a partir de la fecha en que fué impuesta.

¿Fué acaso el procedimiento utilizado por los interventores en este caso el de embargo, que se menciona en la sección 61(c), supra, o el de apremio (*distraint*), según lo califica el peticionario? Contestamos en la negativa. La actuación de los interventores al cobrarle al peticionario contribuciones sobre ingresos tasadas e impuestas, mediante el procedimiento de retenciones parciales de sueldo como Senador, lo fué a tenor con las disposiciones del artículo 124 del Código Político. No fué utilizando el procedimiento administrativo de apremio (*distraint*) para el cobro de contribuciones sobre ingresos y para el cual, por disposición de la citada sección 83 de la ley, supra, se sigue el mismo procedimiento de apremio establecido por la ley para el cobro de contribuciones sobre la propiedad y el cual no se considera debidamente iniciado hasta que se practique el embargo y la venta de los bienes del contribuyente. *Bianchi v. Domenech, Tesorero*, supra; 10 Mertens, sección 57.86, pág. 274. No puede, pues, decirse que la actuación del Tesorero, al retener salarios devengados, fué un acto de *"distraint"* (apremio), el cual es un procedimiento definido para el cobro de contribuciones.

Si bien es cierto que la tantas veces citada sección 61(c) establece un período prescriptivo para entablar un procedimiento judicial o trabar un embargo (apremio) para cobrar una contribución tasada e impuesta, ese período solamente impide al Tesorero ejercitar dichos remedios pero en forma alguna limita su derecho a cobrar la contribución por otros medios que puedan existir en ley. *Sucrs. de Sobrino y Cía. v. Tribl. Contribuciones*, 68 D.P.R. 874; *Rodríguez &*

*Palacios* v. *Tribl. Contribuciones*, 68 D.P.R. 685. El artículo 124 del Código Político prohibe autorizar cualquier desembolso de dinero a favor de una persona que aparezca en descubierto con El Pueblo de Puerto Rico por deudas atrasadas si éstas constan en los libros del Contador.([5])  No vemos el aparente conflicto que señala el peticionario que existe entre la sección 61(*c*) y el artículo 124.  Ambas disposiciones son perfectamente armonizables, la primera se refiere a procedimientos para el cobro de contribuciones sobre ingresos, estableciéndose un período prescriptivo, la segunda se refiere a una prohibición absoluta de pagar dinero a ninguna persona por salario o reclamación, si esa persona se hallare en descubierto con El Pueblo de Puerto Rico por deudas atrasadas, cualquiera que sea la naturaleza de esas deudas.  Entre ellas están incluídas las deudas contributivas.  No vemos justificación alguna para la contención del peticionario al efecto de que, aceptando como acepta, que está en deuda con El Pueblo de Puerto Rico, por no haber pagado las contribuciones sobre ingresos que le fueron debidamente tasadas, tenga derecho a percibir sus salarios completos como Senador.  No podía el Tesorero cobrarlas por la vía judicial o la de apremio, pero la ley sí le autoriza a no pagarle esos salarios y dedicarlos a solventar esa deuda.

■ Como segundo error el peticionario alega que el Tribunal de Contribuciones erró "al resolver que el Tesorero podía cobrar las contribuciones envueltas en este pleito a través de la oficina del Auditor."

---

([5]) El peticionario no demostró ante el tribunal inferior que no adeudara las contribuciones y que dicha deuda no constara en los libros del Contador.  Por el contrario, en la vista en el tribunal inferior hizo constar lo siguiente:

"Entre las alegaciones del demandante en su querella enmendada el demandante expone que las contribuciones envueltas en este caso fueron tasadas e impuestas ilegalmente, sin base de ingresos que las justificara. El demandante confiando en las cuestiones de derecho planteadas en este caso, y aunque cree que es enteramente cierto lo alegado por él, va a desistir de esa parte de la alegación."

Arguye que la estipulación de las partes en el tribunal inferior en la cual estipularon que no se había iniciado ningún otro recurso, demuestra que en este caso se violaron las circulares del Auditor de Puerto Rico que obran en autos y específicamente la regla 13 de las promulgadas en 8 de marzo de 1950, que dice que "No se tramitará el cobro de las contribuciones u otras deudas al erario a través de la oficina del Auditor a menos que se hayan agotado los recursos de cobro que tiene el Tesorero de acuerdo con las disposiciones de ley y sus reglamentos"; y la regla 14 de la misma circular, que dispone que "Se le dará curso... una vez resuelto que el empleado carece de otros bienes u otros ingresos de donde efectuar el cobro, y solamente cuando él no haya querido acogerse a las disposiciones de la Ley núm. 19 de 1931". Las disposiciones de la circular a que hace referencia el peticionario son de carácter administrativo para gobierno interno de la Oficina del Auditor, que en forma alguna podrían limitar o restringir la aplicación del artículo 124 del Código Político, supra, el cual, como hemos dicho, contiene una prohibición absoluta.

■ En apoyo del tercer error señalado, el peticionario alega que no fué advertido antes de descontarse de sus salarios la contribución adeudada, y que esto por sí solo, vicia el procedimiento seguido por el Tesorero. Surge de los autos que el peticionario fué notificado, advertido y requerido por correo certificado para que pagara las contribuciones adeudadas, y que cada año se le envió la respectiva notificación. En cuanto al procedimiento seguido para las retenciones de su sueldo el querellante no fué advertido pero sí notificado de los descuentos y retenciones que se hicieron de su salario de Senador. La notificación iba unida al cheque del sueldo así descontado. En esa notificación se indicaba el tipo de la contribución, el monto de la misma y el balance por el cual se le enviaba el cheque.

No hay nada en el procedimiento seguido en este caso

que anule las retenciones efectuadas a tenor con las disposiciones del artículo 124 del Código Político. La advertencia que señala el peticionario no es un requisito que exija dicho artículo.

*Debe confirmarse la sentencia.*