EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| José A. Lázaro Rodriguez, et al.<br><br>Recurridos<br><br>v.<br><br>Departamento de Hacienda<br><br>Peticionario | Certiorari<br><br>2018 TSPR 149<br><br>200 DPR ____ |

Número del Caso: CC-2017-69


Fecha: 9 de agosto de 2018


Tribunal de Apelaciones:

      Región Judicial de Bayamón


Oficina del Procurador General:

      Lcdo. Luis R. Román Negrón
      Procurador General

      Lcda. Carmen A. Riera Cintrón
      Procuradora General Auxiliar


Abogados de la parte recurrida:

      Lcdo. Josué Rodríguez Robles
      Lcda. Natalia E. Galíndez Velázquez


Materia: Derecho tributario: Efecto de una tasación en peligro cuando la misma se lleva a cabo dentro del término prescriptivo para tasar una deuda contributiva, pero se notifica posterior al vencimiento de dicho término.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José A. Lázaro Rodríguez
*et al.*

   Recurridos

      v.               CC-2017-0069     Certiorari

Departamento de Hacienda

   Peticionario

El Juez Asociado señor ESTRELLA MARTÍNEZ emitió la opinión del Tribunal

San Juan, Puerto Rico, a 9 de agosto de 2018.

La presente controversia nos permite analizar varios contornos del proceso de notificación de deficiencia contributiva llevado a cabo por el Departamento de Hacienda. Específicamente, debemos resolver si una tasación en peligro interrumpe el término prescriptivo para tasar una deficiencia contributiva y si su notificación al contribuyente puede ser hecha transcurrido el término de cuatro años que tiene el Departamento de Hacienda para realizar la acción de tasar.

Con eso en mente, procedamos a puntualizar el contexto fáctico y procesal en el cual se desarrolla la presente controversia.

**I**

Durante el 2008, el Sr. José A. Lázaro Rodríguez (señor Lázaro Rodríguez) suscribió con la compañía Evertec un Acuerdo de separación y relevo. A tenor con ese acuerdo, Evertec le pagaría al señor Lázaro Rodríguez la cantidad de $153,401.00 en concepto de cesantía y terminación de empleo, a cambio de un relevo total de cualquier posible reclamación que tuviese contra Evertec, a raíz de su relación laboral.

El 13 de abril de 2009, el señor Lázaro Rodríguez junto con su esposa (en conjunto, los Contribuyentes o recurridos), radicaron su planilla de contribución sobre ingresos correspondientes al año 2008. En ésta, presentaron la cantidad pagada por Evertec al señor Lázaro Rodríguez como otros ingresos exentos de contribución.

Posteriormente, a raíz de una investigación, el 15 de abril de 2013, el Negociado de Auditoría Fiscal del Departamento de Hacienda le envió a los Contribuyentes una Notificación de determinación preliminar de deficiencia y notificación de tasación y cobro de contribución en peligro. En ésta, se les informó que se había llevado a cabo una **tasación en peligro** y que la misma identificó una deficiencia principal de $64,349.54, intereses acumulados ascendentes a $25,757.92 y una penalidad por la cantidad de $6,434.95, para un total de $96,542.41. La referida tasación en peligro fue registrada en el sistema del Departamento de Hacienda (Hacienda o peticionario) el 15 de

abril de 2013. La notificación, por su parte, fue depositada en el correo el 25 de abril de 2013, es decir, pasados los cuatro años desde que fue radicada la planilla de contribución sobre ingresos.

Una vez notificados de la tasación, los Contribuyentes solicitaron una vista administrativa. En ella, se limitaron a establecer que la deficiencia que se les había notificado el 25 de abril de 2013 estaba prescrita. A tales efectos, los recurridos presentaron una <u>Solicitud de prescripción de deuda contributiva</u>.

Así las cosas, el 27 de enero de 2014, Hacienda envió a los Contribuyentes una <u>Notificación final de la deficiencia</u> en la cual se les informó a estos que su deuda ascendía a la suma total de $102,029.49, que no estaba prescrita y que los ingresos que estos presentaron como no tributables, sí estaban sujetos a rendir contribución. Además, se les apercibió a los recurridos de su derecho a recurrir al Tribunal de Primera Instancia, en el término de treinta días jurisdiccionales, para impugnar la determinación emitida.

Oportunamente, los Contribuyentes presentaron la demanda correspondiente para revisar la antes mencionada determinación final de deficiencia de contribución. En ella, sostuvieron que la deuda que Hacienda intentaba cobrar estaba prescrita. Ello, ya que el peticionario debió haber **tasado y notificado de manera final la deficiencia en**

**controversia en o antes del 15 de abril de 2013; cosa que no hizo hasta el 27 de enero de 2014.**

Por otra parte, Hacienda presentó una sentencia sumaria en la que sostuvo, en esencia, que siguió el trámite correspondiente, pues llevó a cabo la tasación en peligro dentro del periodo prescriptivo y notificó a los Contribuyentes de la tasación dentro de los treinta días siguientes de efectuada la misma, según requerido por la Sección 6003(b) del Código de Rentas Internas, 13 LPRA sec. 8023(b) (ed. 2007). En respuesta, los recurridos presentaron su correspondiente oposición y, a su vez, presentaron una sentencia sumaria a su favor. En síntesis, alegaron que la única manera posible de interrumpir el término prescriptivo dispuesto en el Código de Rentas Internas era a través de una notificación de **determinación final**. Consecuentemente, arguyeron que en este caso la determinación final de la deficiencia no fue emitida hasta el 27 de enero de 2014 y que, por ende, la deficiencia estaba prescrita.

Luego de varios incidentes procesales, el 24 de febrero de 2015, el Tribunal de Primera Instancia dictó sentencia a favor de los Contribuyentes. En ella, el foro primario determinó que la deuda estaba prescrita, pues no bastaba con que "[Hacienda] haya tasado en peligro la deficiencia el 15 de abril de 2013 . . . , sino que era esencial que enviara la notificación de la referida tasación en o antes del 15 de abril de 2013, fecha de vencimiento del término

prescriptivo de cuatro (4) años". Sentencia, Apéndice del certiorari, pág. 246. También, el Tribunal de Primera Instancia impuso honorarios de abogado al Estado, al entender que éste había actuado de manera temeraria.

Ante ello, y en disconformidad con esa decisión, Hacienda recurrió al Tribunal de Apelaciones argumentando que la deuda no estaba prescrita, puesto que la tasación en peligro se llevó a cabo antes que culminara el término prescriptivo. Así pues, sostuvo que aunque de ordinario ese término sólo puede ser interrumpido por la notificación de determinación final de deficiencia, como excepción se permite que se interrumpa a través de una tasación en peligro. De igual forma, planteó que era improcedente la imposición de honorarios de abogados al Estado en un pleito de esta naturaleza, a tenor con las Reglas de Procedimiento Civil vigentes, 32 LPRA Ap. V R. 44, y la Ley de pleitos contra el Estado, 32 LPRA secs. 3077-3084. Examinada la posición de ambas partes, el foro apelativo intermedio confirmó en su totalidad el dictamen emitido por el Tribunal de Primera Instancia.

Por consiguiente, Hacienda recurre ante nos y plantea los siguientes errores, a saber:

> Erró el Honorable Tribunal de Apelaciones al confirmar la sentencia sumaria dictada por el TPI, y por ende determinar que la deficiencia notificada por el Departamento de Hacienda al contribuyente está prescrita por alegadamente haberse notificado la tasación fuera del término prescriptivo para tasar y notificar la deuda.

> Erró el Tribunal de Apelaciones al confirmar la sentencia emitida por el TPI y condenar al

estado al pago de honorarios por temeridad, a pesar de que la Ley de pleitos contra el Estado prohíbe tal curso de acción.

Expedido, el 28 de abril de 2017, el recurso de *certiorari* y con el beneficio de los alegatos de ambas partes, procedemos a resolver.

## II

### A.

Según la Sección 2 del Artículo VI de nuestra constitución, "[e]l poder del Estado Libre Asociado para imponer y cobrar contribuciones . . . se ejercerá según se disponga por la Asamblea Legislativa, y nunca será rendido o suspendido". Art. VI, Sec. 2, Const. ELA, LPRA, Tomo 1. En ese sentido, este Tribunal ha reiterado que la facultad de tributación del Estado "es el más fundamental de sus poderes públicos y gubernamentales". Demeter International, Inc. v. Secretario de Hacienda, res. el 12 de febrero de 2018, 2018 TSPR 21, pág. 14, 199 DPR __ (2018). Véase, también, Díaz Rivera v. Srio. de Hacienda, 168 DPR 1, 14 (2006); Burlington Air Exp., Inc. v. Mun. Carolina, 154 DPR 588, 597 (2001). Del mismo modo, este Tribunal ha señalado que la autoridad contributiva que posee el Estado es fundamental para su sobrevivencia. Demeter International, Inc. v. Secretario de Hacienda, supra. Por lo cual, hemos concluido que éste poder fiscal del gobierno "se perfila como uno de naturaleza amplia y abarcadora". Íd.

De igual manera, y en relación a la controversia ante nos, resulta necesario recalcar la importancia de la

contribución sobre ingresos, a saber: uno de los principales tributos que más rentas contributivas produce al erario puertorriqueño. Véase, G. Meléndez Carrucini, *Ingreso tributable: Inclusiones y doctrinas*, 1ra ed., San Juan, Instituto de Contribuciones de Puerto Rico, 1991, pág. 12. La tributación sobre ingresos cuenta también con la particularidad de ser una contribución autoimpuesta, dado que es responsabilidad del contribuyente reportar fielmente sus ingresos, calcular su responsabilidad tributaria y pagar la misma. Íd. Véase, también, Y. Alemán Torres et al., *Términos prescriptivos para tasar y cobrar una deficiencia de contribución sobre ingresos*, 38 Rev. Der. P.R. 467, 467-468 (1999); Laing v. U.S., 423 US 161, 191 (1976). Por tal razón, es deber de Hacienda monitorear y fiscalizar la radicación de planillas de contribución sobre ingresos con tal de auditar si es correcto el monto de contribución declarado por el contribuyente y, así, evitar la evasión contributiva. Véase, Demeter International, Inc. v. Secretario de Hacienda, supra; Alemán Torres et al., supra, pág. 468. Una vez llevada a cabo esta fiscalización, el Secretario de Hacienda (Secretario) notifica las deficiencias que haya identificado en las planillas rendidas por los contribuyentes. Véase, F. A. Arabía, *Manual de contribución sobre ingresos*, 2da ed. rev., San Juan, Ed. Cultural, pág. 199.

Sin embargo, el poder del Estado para el cobro y fiscalización de contribuciones no es irrestricto. Carazo v. Srio. de Hacienda, 118 DPR 306, 310 (1987). Es decir, este poder "[e]stá sujeto a trámites mínimos de 'debido proceso de ley', a la exigibilidad y validez de la deuda, y **a los términos prescriptivos dispuestos en los diversos estatutos**". Íd. (énfasis suplido).

**B.**

Conforme a lo anterior, en primer término, debemos analizar el proceso ordinario de notificación de deficiencias. Este es, "el trámite administrativo por el cual el Secretario informa al contribuyente que **determinó** una contribución mayor a la que éste declaró, para que se defienda mediante los procesos administrativos o judiciales correspondientes". Meléndez Caruccini, Ingreso tributable, op. cit., pág. 34 (énfasis suplido). Así las cosas, en el Código de Rentas Internas del 1994[1] se divide el proceso en dos etapas, a saber: la notificación de determinación preliminar y la notificación de determinación final. 13 LPRA sec. 8022 (ed. 2007). En ese sentido, cuando el Secretario determinare que un contribuyente tiene una deficiencia contributiva, este deberá notificarle la determinación de manera preliminar por correo certificado.

---

[1]Los hechos de este caso surgen en el año 2008. Para ese entonces, aún estaba vigente el Código de Rentas Internas de 1994. Véase, Pastor León v. ELA, 196 DPR 78 (2016). No obstante, debemos aclarar que nuestro Código de Rentas Internas de 1994 y el actual contienen un lenguaje prácticamente idéntico. Compárese 13 LPRA secs 8021-8027 (ed. 2007), con 13 LPRA secs. 33002-33007.

Una vez enviada esa notificación, el contribuyente tendrá treinta días, desde la fecha del depósito en el correo de la notificación, para solicitar por escrito una reconsideración de la deficiencia señalada y una vista administrativa a esos fines. Si el contribuyente no solicitare reconsideración, o la misma es solicitada y la deficiencia es confirmada, el Secretario procederá a notificar su determinación final sobre la deficiencia identificada. Subsiguientemente, el contribuyente tendrá treinta días, desde la fecha del depósito en el correo de la notificación de la determinación final, para impugnarla ante el Tribunal de Primera Instancia. De esta manera, el Código provee al contribuyente las herramientas para impugnar la determinación de Hacienda, ser escuchado sobre su reclamo, presentar evidencia a su favor y solicitar revisión judicial, según exigido por el debido proceso de ley.

Es después de este proceso ordinario, que el Secretario está facultado entonces para llevar a cabo la **tasación** de la deficiencia contributiva. Ello es, "el acto del Secretario, después de culminadas las notificaciones y demás trámites que le siguen, **de requerir del contribuyente el pago** de la deficiencia o contribución y poder embargar o demandar el cobro de la misma". Meléndez Caruccini, Ingreso tributable, op. cit., pág. 34 (énfasis suplido).

A esos efectos, es importante entender que la notificación de determinación de deficiencia preliminar no

autoriza ni faculta al Secretario llevar a cabo cualquier gestión de cobro, ya sea por medio del procedimiento de apremio o la vía judicial. Véase, G. Meléndez Carrucini, Procedimiento contributivo de Puerto Rico, 1ra ed., San Juan, Instituto de Contribuciones de Puerto Rico, 1981, pág. 9. Por tanto, no es hasta la notificación de la determinación de deficiencia final que se puede llevar a cabo la tasación y el cobro correspondiente.

En ese sentido, el procedimiento de apremio constituye la "[f]ase del procedimiento de recaudación [de contribuciones] de **naturaleza exclusivamente administrativa que se inicia . . .** y que tiene como finalidad exigir y **cobrar la deuda tributaria pendiente y los correspondientes recargos**". Diccionario del español jurídico (S. Muñoz Machado, ed.), 1ed., España, Real Academia Española, 2016, pág. 1328 (énfasis suplido).[2] En otras palabras, y como menciona Meléndez Carruccini, una vez la deuda esté válidamente tasada, el Secretario está facultado para cobrar por la vía de apremio, entiéndase embargo extrajudicial, o por la vía judicial mediante una demanda en corte. Meléndez Caruccini, Ingreso tributable, op. cit., pág. 35; Véase, además, 13 LPRA secs. 6150-6169 (ed. 2007).

### C.

No obstante lo anterior, el Código de Rentas Internas bajo análisis contenía una excepción a ese proceso

---

[2]Véase, además, Pagán v. Tribl. Contribuciones, 73 DPR 654, 656-658 (1952) (El procedimiento de apremio (distraint) es análogo o equivalente al de embargo).

ordinario. Particularmente, la Sección 6003 establecía que "[s]i el Secretario creyere que la tasación o el cobro de una deficiencia ha de **peligrar** por la demora, **tasará inmediatamente dicha deficiencia**". 13 LPRA sec. 8023(a) (ed. 2007) (énfasis suplido). Debe quedar claro que este procedimiento, como hemos mencionado, es la excepción, puesto que permite llevar a cabo una tasación previo a cualquier tipo de trámite administrativo o notificación al contribuyente. Véase, Meléndez Carrucini, Ingreso tributable, op. cit., pág. 34. Véase, además, Alemán Torres et al., supra, pág. 473; M. Tirado Rivera, Fundamentos de las contribuciones sobre ingresos de Puerto Rico, 2da ed. rev., 1986, pág. 454.

Al respecto, este Tribunal ha establecido que la facultad del Secretario de llevar a cabo tasaciones en peligro descansa en el ejercicio de su discreción. Véase, Ramos v. Srio. de Hacienda, 85 DPR 424, 427 (1962). Así pues, hemos expresado que "[l]a ocasión más frecuente en que se hace uso de esta facultad discrecional es cuando el término para la notificación de la deficiencia está a punto de transcurrir . . .". Íd., pág. 427.

Adviértase, que el mecanismo de tasación en peligro contiene los requisitos mínimos para cumplir con el debido proceso de ley. Ello, ya que requiere que se le notifique al contribuyente de cualquier tasación en peligro que se haga respecto a una deficiencia señalada dentro de los

treinta días siguientes a la fecha de efectuada la misma.[3] Nótese, que una tasación en peligro sí tiene que cumplir con los términos prescriptivos proscritos en el Código de Rentas Internas. De este modo, no es válida una tasación en peligro hecha luego de transcurrido el término prescriptivo aplicable.

**D.**

De otra parte, en lo pertinente a la controversia ante nos, la Sección 6005 del Código de Rentas Internas de 1994 disponía de un término prescriptivo. Particularmente, señalaba que las contribuciones impuestas serían **tasadas** "dentro de cuatro (4) años después de haberse rendido la planilla o declaración . . .". 13 LPRA sec. 8025 (ed. 2007). Así también, indicaba que este término comenzaría a decursar desde el último día hábil para poder radicar la planilla, sin importar que la misma hubiera sido radicada con anterioridad a tal fecha.[4]

---

[3]Este tipo de tasación se deriva de su análogo en el Código de Rentas Internas federal conocido como "Jeopardy Assessment". Para un análisis expositivo de su validez constitucional y la línea de jurisprudencia que ha examinado la validez de esta, véase C. Ronald Kalteyer, The Taxpayer's Right to Counsel in Jeopardy Assessments, 56 Tex. L. Rev. 883 (1978). A tales fines, es importante tomar en consideración que el Código de Rentas Internas de 1994 es derivado, en su mayoría, de su homólogo federal.

[4]Para las personas que radican a base de año natural, el último día hábil para la radicación lo es el 15 de abril. 13 LPRA sec. 6005(e) (ed. 2007). Véase, también, Y. Alemán Torres et al., Términos prescriptivos para tasar y cobrar una deficiencia de contribución sobre ingresos, 38 Rev. Der. P.R. 467, 471 (1999).

Por otro lado, la Sección 6007 disponía lo relativo a la interrupción del término prescriptivo antes citado. La mencionada sección establecía que:

> El período de prescripción establecido en la[] secci[ó]n[] 6005 . . . **para la tasación** y para el comienzo de un procedimiento de apremio o de un procedimiento en corte para el cobro, con respecto a cualquier deficiencia, quedará, **después del envío por correo de la notificación de la determinación final** establecida en la sección 6002(a) de este Subtítulo, **interrumpido por el período durante el cual el Secretario está impedido de hacer la tasación** o de comenzar el procedimiento de apremio . . . . 13 LPRA sec. 8027 (ed. 2007) (énfasis suplido).

Por ende, aunque la regla general requiere que la tasación se efectúe previo al transcurso del término prescriptivo, ese acto no puede ser llevado a cabo hasta tanto no se complete el proceso ordinario de notificación de deficiencias. Ello conforme el inciso 10 de la Sección 6002 el cual disponía que:

> **No se hará la tasación de una deficiencia con respecto a la contribución impuesta** por cualquier Subtítulo de este Código, ni se comenzará o tramitará procedimiento de apremio o procedimiento en corte para su cobro, **antes de que la notificación de la determinación final a que se refiere el párrafo (1) haya sido enviada** por correo certificado al contribuyente . . . . 13 LPRA sec. 8022(a)(10) (ed. 2007)(énfasis suplido).

Como vemos, aunque es necesario que Hacienda tase las deficiencias previo al transcurso del término prescriptivo en cuestión, la realidad es que de ordinario **está impedido de llevar a cabo esa acción, previo a la notificación de determinación final de deficiencia.**

Es importante mencionar lo dispuesto por la Sección 6007, _supra_, en cuanto a que la notificación de determinación final, **en efecto, interrumpe el término de cuatro años para la tasación**. Es decir, a pesar de que Hacienda no puede llevar a cabo tasaciones a deficiencias contributivas antes de emitir una notificación final, para fines de interrumpir el término prescriptivo, este tiene la alternativa de interrumpirlo mediante el envío de la notificación de determinación de deficiencia final, según establecido en la Sección 6002. Es menester recordar que, si luego de decursado el término de treinta días luego de enviada la notificación de determinación de deficiencia final, y el contribuyente no acudiere al Tribunal de Primera Instancia, el Secretario podrá comenzar los procedimientos de tasación y cobro de la deficiencia.

### III

En _Fraguada Bonilla v. Hosp. Aux. Mutuo_ expresamos que "[l]a prescripción es una institución que extingue un derecho por la inercia de una parte en ejercerlo durante un periodo de tiempo determinado". _Fraguada Bonilla v. Hosp. Aux. Mutuo_, 186 DPR 365, 372-373 (2012). A tales efectos, es importante recordar que los términos prescriptivos buscan fomentar la diligencia en la instauración de pleitos y asegurar la estabilidad de las relaciones jurídicas. _Íd._, pág. 373. Es decir, los términos prescriptivos buscan que se tramiten los pleitos de la manera más efectiva posible, puesto que evitan que estos se vean afectados por la

pérdida de evidencia o la memoria incierta creada por el transcurso del tiempo. Íd. Más aún, este Tribunal ha establecido que la prescripción "no es una figura rígida[,] sino que la misma admite ajustes judiciales, según sea requerido por las circunstancias particulares de los casos y la noción sobre lo que es justo". Santiago Rivera v. Ríos Alonso, 156 DPR 181, 189-190 (2002).

**IV**

A la luz del Derecho expuesto anteriormente, es importante tener presente que "las leyes fiscales deben interpretarse restrictivamente, las mismas **tienen que ser interpretadas en forma jurídica y razonable, teniendo en mente el propósito e intención general del legislador al aprobarlas**. En el caso de **leyes fiscales, este es el de recaudar fondos para poder llevar a efecto la obra pública**". Roque González & Co. v. Srio de Hacienda, 127 DPR 842, 856-857 (1991) (énfasis suplido); IFCO Recycling v. Aut Desp. Sólidos, 184 DPR 712, 741 (2012). Véase, además, Carazo v. Srio. de Hacienda, supra, pág. 310; Mun. de San Juan v. Prof. Research, 171 DPR 219, 231 (2007); Díaz Rivera v. Srio. de Hacienda, supra, pág. 14. Sobre este asunto, el Tribunal Supremo federal estableció que en casos de incertidumbre sobre la aplicación de un estatuto que imponga el pago de impuestos, se debe interpretar el mismo de forma favorable al ciudadano. Gould v. Gould, 245 US

151, 153 (1917).[5] Sin embargo, lo anterior no equivale a que un estatuto que imponga el pago de contribuciones **siempre** se interpretará a favor del contribuyente. Ello pues, si la ley es clara será aplicada e interpretada conforme a su significado literal. Respecto a lo anterior, es un principio fundamental de hermenéutica que cuando la ley sea clara y esté libre de toda ambigüedad, "su letra no debe ser menospreciada bajo el pretexto de cumplir con su espíritu". Rosado Molina v. ELA, 15 DPR 581, 589 (2016); Art. 14 del Código Civil, 31 LPRA sec. 14. Véase, además, Mun. San Juan v. Banco Gub. Fomento, 140 DPR 873 (1996); cf. Pueblo v. Zayas Rodríguez, 147 DPR 530 (1999).

Ahora bien, en Rosado Molina v. ELA, supra, sostuvimos que la ley debe ser interpretada "en su conjunto, y no por secciones separadas". Rosado Molina v. ELA, supra, pág. 590 (citas omitidas). Además, expresamos que, en lo referente a la interpretación de la ley, "estamos obligados a armonizar, en la medida de lo posible, todas las disposiciones de ley, en aras de obtener **un resultado más sensato, lógico y razonable**". Íd. (citas omitidas) (énfasis suplido).

A tenor con la normativa jurídica antes expuesta, procedemos a resolver la controversia de epígrafe.

---

[5]Esta norma fue adoptada por este Tribunal en B.B.C. Realty v. Secretario de Hacienda, 166 DPR 498 (2005).

**V**

Por los fundamentos que expondremos a continuación, sólo atenderemos el primer error señalado por el peticionario. Este dispone del recurso y concede, en consecuencia, la razón a Hacienda en su señalamiento de error adicional, por lo que huelga abundar en torno al segundo error señalado.

La controversia ante nos versa sobre si una tasación en peligro interrumpe el término prescriptivo para tasar una deficiencia contributiva. Además, debemos resolver si la notificación de esa tasación en peligro debe ser hecha previo al transcurso del referido término. A tales efectos, los recurridos sostienen que la deuda que Hacienda intenta cobrar está prescrita, puesto que la notificación de determinación final fue emitida fuera del término prescriptivo. Asimismo, sostienen que la tasación en peligro efectuada no es eficaz, ya que fue notificada fuera del referido término. En contraste, Hacienda arguye que interrumpió la referida deficiencia el 15 de abril de 2013 una vez tasó en peligro la misma y notificó a los Contribuyentes en los siguientes treinta días, según requerido por el Código de Rentas Internas de 1994.

Luego de examinado el expediente y los alegatos de las partes, a la luz del derecho aplicable, concluimos que la deuda en controversia no está prescrita. Los Contribuyentes sostienen que el término prescriptivo de cuatro años aplicable a esta controversia sólo se puede interrumpir por medio de la notificación final, según establecido en la

Sección 6007 Código de Rentas Internas del 1994, <u>supra</u>. No les asiste la razón.

En primer término, los recurridos arguyen en su oposición que una tasación en peligro es sinónimo a una **tasación de apremio**.[6] De esta manera, su argumento se basa en un análisis incorrecto de que cuando la Sección 6007, <u>supra</u>, hace referencia a un "procedimiento de apremio", se refiere a una tasación en peligro. Consecuentemente, aducen que la única manera de interrumpir el término prescriptivo, incluso en el contexto de una tasación en peligro, es a través de la notificación de determinación final de deficiencia. Debemos entender que la frase "procedimiento de apremio" se refiere al mecanismo de embargo que tiene disponible el Secretario para poder efectuar el cobro de una deficiencia. <u>Véase</u>, <u>Pagán v. Tribl. Contribuciones</u>, 73 DPR 654, 656-658 (1952); <u>Laing v. U.S.</u>, supra, pág. 192; <u>Flora v. U.S.</u>, 362 U.S. 145, 195 (1960) (Whittaker, J., disintiendo); <u>Meléndez Carrucini</u>, <u>Ingreso tributable</u>, <u>op. cit.</u>, pág. 35; <u>Meléndez Carrucini</u>, <u>Procedimiento contributivo</u>, <u>op. cit.</u>, págs. 606-631; <u>Alemán Torres et al.</u>, <u>supra</u>, págs. 474-475; C. Ronald Kalteyer, <u>The Taxpayer's Right to Counsel in Jeopardy Assessments</u>, 56 Tex. L. Rev. 883, n.48 (1978).

---

[6]Estos planteamientos fueron erróneamente acogidos por el Tribunal de Apelaciones, al razonar que "[s]urge claramente que la interrupción del término prescriptivo de cuatro (4) años, **tanto para la tasación ordinario como para la tasación de apremio o en peligro**, sólo se logra con la notificación de la determinación final de deficiencia". <u>Véase</u>, Sentencia, Apéndice del <u>certiorari</u>, pág. 751.

Una lectura aislada del artículo 6007, supra, llevaría a la conclusión de que la **única** manera de interrumpir el término prescriptivo de cuatro años es a través del envío de la notificación de determinación de deficiencia final. Sin embargo, el referido artículo no toma en consideración la tasación en peligro, según establecido en la Sección 6003, supra. De un análisis armonioso de la Sección 6007 y la 6003, supra, se deprende que la tasación en peligro constituye un mecanismo extraordinario que válidamente interrumpe el término prescriptivo, previo cualquier notificación al contribuyente. Eso es así, puesto que esta herramienta tiene el propósito de prevenir que por razón de demora se pierda el posible cobro de deficiencias, reduciendo el posible monto de contribuciones recaudado por Hacienda.

A esos efectos, determinamos que el llevar a cabo una tasación en peligro sí interrumpe el término prescriptivo, siempre y cuando se efectúe dentro del precitado término. Es menester tener presente que el propósito legislativo plasmado en el Código de Rentas Internas no nos permite resolver lo contrario. Ciertamente, si resolvemos como plantean los Contribuyentes, ello resultaría en dejar a esta sección sin propósito o utilidad alguna. Es decir, resolver de esa forma tendría como consecuencia que la tasación en peligro, que claramente fue establecida por la Asamblea Legislativa, no tendría eficacia alguna; siendo

esto un resultado ilógico e irrazonable, a la luz del propósito legislativo.

Claro está, para la eficacia de una tasación en peligro, es importante que la misma sea notificada dentro de los siguientes treinta días de efectuada la tasación, sin importar que este término exceda el término prescriptivo, dispuesto para el acto de tasar. Ello, pues una vez la tasación en peligro es llevada a cabo, el referido término se interrumpe, por lo que no existe justificación para sujetar la notificación de ésta al término ya interrumpido. Recordemos, además, que el Código de Rentas Internas de 1994 no consagraba de forma expresa que el requisito de notificar la tasación en peligro se tenía que efectuar **dentro de ese término prescriptivo**. Ante esa realidad, el método de notificación propuesto por los recurridos conllevaría al absurdo de informar en una etapa prematura, no contemplado en el Código de Rentas Internas. Máxime, cuando aún no se ha comenzado formalmente el proceso para solicitar reconsideración de la deficiencia señalada por el Secretario. No es hasta luego de la notificación de la tasación en peligro que el contribuyente tendrá la oportunidad de solicitar una vista administrativa y, posteriormente, presentar su caso ante el Tribunal de Primera Instancia. En el caso presente, no se le despojó a los Contribuyentes de tal derecho y eventualmente fueron notificados de manera oportuna

Aplicando lo anterior a los hechos del presente caso, los Contribuyentes radicaron su planilla el 13 de abril de 2009. Por consiguiente, Hacienda tenía que tasar la deficiencia en o antes del 15 de abril de 2013 y notificar la referida tasación dentro de los siguientes treinta días de efectuada la misma. El Secretario cumplió con lo anterior una vez tasó la deficiencia el 15 de abril de 2013 y notificó la misma el 25 de abril de 2013.

Por otra parte, una vez Hacienda tasó la deficiencia en cuestión, tenía siete años para el cobro de la deficiencia. Es decir, tiene hasta el 15 de abril de 2020 para cobrar la deficiencia señalada. Ese término sólo podía ser interrumpido con el envío de la notificación de determinación **final** de deficiencia. La referida notificación fue enviada el 27 de enero de 2014, es decir, dentro del término. En consecuencia, Hacienda interrumpió el término para el cobro de la deficiencia, previo a su prescripción.[7]

## VI

Por los fundamentos antes expuestos, concluimos que el Tribunal de Primera Instancia y el Tribunal de Apelaciones erraron, al entender que la tasación en peligro efectuada el 15 de abril de 2013 no interrumpió el término

---

[7]Más aún, no vemos que el hecho de que la notificación se haya enviado a los Contribuyentes fuera del término prescriptivo los haya colocado en un estado de indefensión. Véase, Qume Caribe, Inc. v. Srio. de Hacienda, 153 DPR 700, 716-718 (2001). Además, surge del expediente que los Contribuyentes pudieron impugnar, de manera sustantiva, la

prescriptivo y que la notificación de esa tasación tenía que ser enviada previo la culminación del referido término de cuatro años. Por tal razón, revocamos la sentencia recurrida y se ordena al Tribunal de Primera Instancia continuar con los procedimientos, cónsono con lo establecido en esta Opinión.

Se dictará Sentencia de conformidad.


                                        Luis F. Estrella Martínez
                                                Juez Asociado

---

determinación de deficiencia del Departamento de Hacienda. Demanda, Apéndice del certiorari, pág. 56.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| José A. Lázaro Rodríguez *et al.*<br><br>Recurridos<br><br>v.<br><br>Departamento de Hacienda<br><br>Peticionario | CC-2017-69 | Certiorari |

SENTENCIA

En San Juan, Puerto Rico, a 9 de agosto de 2018.

Por los fundamentos antes expuestos, se concluye que el Tribunal de Primera Instancia y el Tribunal de Apelaciones erraron, al entender que la tasación en peligro efectuada el 15 de abril de 2013 no interrumpió el término prescriptivo y que la notificación de esa tasación tenía que ser enviada previo la culminación del referido término de cuatro años. Por tal razón, se revoca la totalidad de la sentencia recurrida y se ordena al Tribunal de Primera Instancia continuar con los procedimientos, cónsono con lo establecido en esta Opinión.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco disiente y hace constar las siguientes expresiones:

"La Jueza Asociada señora Pabón Charneco disiente del resultado al que llega una Mayoría de este Tribunal. El lenguaje claro de las disposiciones pertinentes del Código de Rentas Internas (CRI) nos lleva a otro resultado. La Sección 8025 dispone que "**[e]xcepto lo dispuesto en la sec. 8026**" los montos de las contribuciones deben ser tasados dentro del término prescriptivo de cuatro (4) años, a partir del último día para radicar planillas. 13 LPRA sec. 8025 (ed. 2007) (Énfasis suplido). Por su parte, la Sección 8026 instituye seis (6) excepciones al término

prescriptivo antes mencionado; sin embargo, **la "tasación en peligro" no fue catalogada como una de las excepciones.** 13 LPRA sec. 8026 (ed. 2007) (Énfasis suplido). Asimismo, la Sección 8027 dispone que el periodo prescriptivo para tasar cualquier deficiencia se interrumpe mediante el envío por correo de la notificación de la determinación final de deficiencia. 13 LPRA sec. 8027 (ed. 2007). Es decir, **la "tasación en peligro" tampoco constituye una de las formas para interrumpir el término prescriptivo para tasar una deficiencia contributiva.** De una lectura del texto de estas disposiciones no surge que lo sea.

La "tasación en peligro" no interrumpe el término prescriptivo de cuatro (4) años para tasar ni constituye una excepción a dicho término. La "tasación en peligro" simplemente constituye una forma alterna de tasar basada en consideraciones de política pública. Es una excepción a la norma general de que se tasa luego de que se notifica la determinación preliminar y final de deficiencia y se dilucida si existe o no la deficiencia notificada. Sin embargo, no exime al Departamento de Hacienda del requisito de notificar las determinaciones preliminares y finales de deficiencia. Aun cuando se efectúa una tasación en peligro, el Departamento de Hacienda está obligado a completar el proceso general establecido en la Sección 8022(a) que requiere la notificación de la determinación preliminar y final de deficiencias e incluye el derecho del contribuyente de solicitar una Vista Administrativa para impugnar la determinación preliminar (proceso administrativo) y presentar una ulterior Demanda de Impugnación de Deficiencia Contributiva para impugnar la determinación final de la deficiencia (proceso judicial). 13 LPRA sec. 8023(b)-(c) (ed. 2007). Por ende, a todas luces, la "tasación en peligro" esencialmente es una forma de acelerar o convertir el trámite administrativo en uno expedito cuando existe la probabilidad de que la deuda contributiva prescriba por la demora de la agencia, nada más."

El Juez Asociado señor Feliberti Cintrón disiente sin opinión escrita. La Juez Asociada señora Rodríguez Rodríguez no intervino.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo